**K&L GATES LLP**
10100 Santa Monica Boulevard
Eighth Floor
Los Angeles, California 90067
Telephone: 310.552.5000
Facsimile: 310.552.5001

Christopher J. Kondon (SBN 172339)
christopher.kondon@klgates.com
Saman M. Rejali (SBN 274517)
saman.rejali@klgates.com
Jonathan D. Kintzele (SBN 316482)
jonathan.kintzele@klgates.com

Attorneys for Defendants Shasta
Beverages, Inc., National Bevpak, and
National Beverage Corp.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMBER GARCIA, VERONICA CERDA, on behalf of themselves and other similarly situated non-exempt former and current employees,<br><br>Plaintiffs,<br><br>v.<br><br>SHASTA BEVERAGES, INC., NATIONAL BEVPAK, NATIONAL BEVERAGE CORP. and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No. 2:19-cv-07798-PA-AFM<br><br>**OPPOSITION TO MOTION FOR CLASS CERTIFICATION**<br><br>Date: March 23, 2020<br>Time: 1:30 p.m.<br>Department: 9A<br><br>[Hon. Percy Anderson] |

1

## I.    <u>INTRODUCTION</u>

The request of Plaintiff Amber Garcia to certify claims on behalf of a class of 350 California Shasta/National Beverage workers should be rejected for several reasons.  Even if commonality could be established, which it cannot, Plaintiff has not established that common issues predominate over individualized issues.  As there is no companywide centralized or uniform practice, key open individualized issues include whether and when various employees had meal periods, whether rest breaks were authorized and taken, whether overtime was properly recorded and compensated, and whether any employee was ever asked to perform off-the-clock work or otherwise suffered wage theft.

In addition, Plaintiff has failed to prove that she is typical or adequate to represent other workers in this matter.  She offers testimony that her supervisor in her department interfered with her meal periods and rest breaks, and offers the declaration testimony of one other worker in another department, but makes no showing that her experience is typical of other workers in other departments or at other facilities.  In addition, she has alleged claims for gender discrimination under California Fair Employment and Housing Act (the "FEHA"), retaliation in violation of FEHA, violation of the California Family Rights Act, and wrongful termination in violation of FEHA.  Her wrongful termination claim will be subject to defenses related to her job performance, which will distract from her representation of the class.  To the best of Defendant's knowledge, only one other putative class member, former named plaintiff Veronica Cerda, is alleging individual discrimination, retaliation and wrongful termination claims.  Plaintiff's claims are not typical of the putative class members, and there is a likelihood that Plaintiff's individual claims are of considerably greater importance and carry significantly more potential liability than her class claims, even where her class representative fee is considered.  Plaintiff is therefore not an adequate class representative.

Last, Plaintiff has failed to prove that class certification is a superior way to

2

address the claims of Defendants' 350 California workers.  Superiority involves factors such as the interest of parties in controlling their own claims and whether a class proceeding will be manageable.  California workers have demonstrated a willingness to pursue claims when they want to pursue them and, here, many workers attest that they were paid for all of the time they worked and that they always took meal periods and rest breaks.  Moreover, the pursuit of claims here will be neither manageable nor efficient.  Plaintiff's counsel has offered no plan for determining liability or damages.  Instead, the litigation is likely to splinter into individual determinations or small subclasses (that may lack numerosity) based on when, where or in what departments workers worked, whether they were authorized to and did take meal and rest breaks, and whether they worked overtime and how and what they were paid.

A class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only."  *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013).  Parties pursuing a class action have the burden to prove numerosity, commonality, typicality, and fair and adequate representation of the class under Fed. R. Civ. P. 23(a) ("Rule 23") as well as that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy" under Rule 23(b)(3).  *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001). "At class certification, a court does not accept at face value a plaintiff's theory of the case," the court must engage in a "rigorous analysis" into whether Rule 23 requirements are satisfied, and "frequently that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim."  *Rodman v. Safeway, Inc.*, 2014 WL 988992, *6 (N.D.Cal. 2014) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011)).

In *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011), the Supreme Court stated that the pivotal question at the class certification stage is not whether plaintiffs can raise a common question, but whether the alleged common question can generate

3

**OPPOSITION TO MOTION FOR CLASS CERTIFICATION - 2:19-CV-07798**

common answers.  *See Narayan v. EGL, Inc.*, 285 F.R.D. 473, 477 (N.D. Cal. 2012); *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011) (quoting *Dukes*, 564 U.S. at 352) (reversing grant of certification and stating "it is insufficient to merely allege any common question.... Instead, they must pose a question that will produce a common answer to the crucial question") (citations omitted).  Here, the "common question" cannot possibly produce common answers.  Workers other than Plaintiff have confirmed in declarations accompanying this Opposition that they were authorized to and did take meal periods and rest breaks, and that they were properly paid for all overtime work.  A review of the work and pay circumstances of each worker would have to be analyzed to determine whether each in fact took meal periods and rest breaks, and whether any worker was denied overtime pay, such that liability and damages could be established.  For this reason, and based on the reasons outlined above, this Court should reject Plaintiff's attempt to certify a class to pursue claims that are inconsistent, are unsupported by others, and fail to satisfy the basic requirements set forth in Rule 23(a) and 23(b)(3).

## II.    STATEMENT OF FACTS

### A.    National Beverage's Soft-Drink Operations and California Workforce

National Beverage Corp. is a publicly-traded manufacturer and distributor of soft drinks and sparkling water beverages headquartered in Fort Lauderdale, Florida.  The Company operates twelve production facilities in the United States, three of which are located in California.  The California facilities are located in La Mirada and Buena Park (near Los Angeles) and Hayward (near Oakland).  As of April 27, 2019, the Company employed approximately 1,640 people, of which 380 are covered by collective bargaining agreements.  The Company's hourly California workforce, which comprises the putative class, is principally engaged in the manufacturing, testing and distribution of canned and bottled beverages.

The workforce of the Hayward, California plant, which is included in the putative class sought to be certified in this action, is covered by a collective bargaining agreement by and between Teamsters Local Union No. 896 and Shasta Beverages, Inc. (the "CBA").  The term of the CBA is September 1, 2017 to August 31, 2022, which overlaps with the proposed class period.  There are currently 88 hourly workers employed at the Hayward facility, 12 of whom are not subject to the CBA, and the remainder of whom are covered by the CBA.

The CBA sets forth the hours of work and permissible overtime work parameters for the union members working in the Hayward facility, and also sets forth rules applicable to meal periods and rest breaks that vary from the requirements of California law.  For example, employees working eight hours on an overtime day are entitled to two twenty-minute breaks, and a fifteen minute break if working at least one hour of overtime.  *See* CBA, Sections 9.9 and 9.9.1.

The current hourly workforce employed in the Company's La Mirada facility is 139 employees who work in three principal shifts.  The workers are assigned to departments, including production, maintenance, quality control, shipping and office/clerical.  Their working conditions (especially as demonstrated by the descriptions contained in Garcia and Cerda's declarations) are inextricably related to the department in which each works and the timing demands presented in said departments.

### B.    Shasta's Workers (Other Than Plaintiff) Attest That Generally Received Their Meal Breaks, Rest Breaks, and Overtime Pay

In declaration testimony submitted with this Opposition, Edward Jindra, a production worker and hourly wage-earner with a 19 year tenure at the Company, states that he has never missed a meal period, has never had a rest period interfered with by another worker, and has never been discouraged from taking a rest break. (Declaration of Edward Jindra ("Jindra Decl."), ¶ 4-9.)  Jindra has never experienced underpayment or other inaccuracies with his overtime pay or time-records.  (*Id.*, ¶¶ 10-

11.)  Production worker Alyssa Garcia (not to be confused with Plaintiff Amber Garcia), a Shasta hourly worker for more than 2 years who processes paperwork and purchase schedules, likewise stated that she has never had any issues similar to those alleged by Plaintiff with meal periods and rest breaks.  Alyssa Garcia also testifies that to her knowledge, there has never been any discrepancy or irregularity in her overtime pay or reported pay whatsoever.  (Declaration of Alyssa Garcia ("Alyssa Garcia Decl."), ¶¶ 4-11.)

Quality control technicians Alan Franco and Jonathan Maldonado sometimes choose to forgo taking their second rest breaks despite being well aware of their entitlement to take those rest breaks.  While Franco estimates that he has missed four or five rest breaks in the prior year, Maldonado estimates he may have missed just one, and neither has felt pressured or discouraged from taking a meal or rest break during their employment.  (Declaration of Alan Franco ("Franco Decl."), ¶¶ 4-11; Declaration of Jonathan Maldonado ("Maldonado Decl."), ¶¶ 4-11.)  Neither reports any instance in which their pay was inaccurate, or that their overtime hours were not properly compensated (Maldonado recalls one pay error that was immediately corrected upon his notifying La Mirada Office Manager Romy Collie).  (*Id.*)

A production worker on the floor of the La Mirada plant who operates filling and packaging machinery, Arica Bonilla, stated that she has never missed a meal period, and has never been prevented from or felt pressured to refrain from taking any rest breaks during her employment with Defendant Shasta.  Bonilla states that there are no instances in which she was not fully paid for hours worked.  (Declaration of Arica Bonilla ("Bonilla Decl."), ¶¶ 4-11.)  During her employment, Bonilla has only once encountered a clerical issue with her overtime pay or time-records, and upon notifying La Mirada Office Manager Romy Collie, Bonilla's time-records were immediately corrected and she was fully paid.  (*Id.*, ¶¶ 10-11.)  Bonilla's job duties include operating filing and packing machinery in connection with the ultimate production and packaging of Defendants' beverages.  (*Id.*, ¶¶ 5-7.)

6

**OPPOSITION TO MOTION FOR CLASS CERTIFICATION - 2:19-CV-07798**

Alyssa Garcia, Bonilla, Jindra, Maldonado, and Franco all uniformly stated that they have never felt pressured to forgo a meal or rest break.  Clearly extensive individual inquiries would be required in connection with the adjudication of this putative class action, rendering the class mechanism useless as applied to the situation presented here.

III.    **ARGUMENT AND AUTHORITY**

A.    **Plaintiffs Have Failed to Prove Commonality**

"Commonality requires the plaintiff to demonstrate…a common contention…capable of classwide resolution--which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350. "The Supreme Court has explained that this requirement is better understood as an inquiry into 'the capacity of a classwide proceeding to generate common **answers** apt to drive the resolution of the litigation.'" *J.T. v. Regence Blueshield*, 291 F.R.D. 601, 612 (W.D. Wash. 2013) (quoting *Dukes*).

Here, the proceedings cannot result in common answers as evidenced by the declarations submitted herewith.  Several employees testified that they always took their lunch and rest breaks.  *See* Bonilla Decl., Jindra Decl.  All testified that improperly tracked or unpaid overtime were not issues that they had experienced.  *See generally* Bonilla Decl., Maldonado Decl., Jindra Decl., Garcia Decl., Franco Decl. The Declaration of Romy Collie ("Collie Decl.") further clarifies that there was no policy or practice of altering overtime.  Collie Decl., ¶¶ 15-16.

Further, the Handbook that Plaintiff claims sets forth an unlawful policy does not even govern a significant portion of the class, given that the CBA applicable to the Hayward employees sets forth its own requirements for taking meal breaks and their timing.  Collie Decl., Ex. C, Section 9 ("An interval of one-half (1/2) hour for meals at or near the middle of a shift shall constitute the meal period.").  The CBA also sets forth its own parameters for overtime scheduling, work, and payment.  Collie Decl., Ex. C, Section 9.3

7

Because commonality requires not simply a common question, but a **common answer**, Plaintiffs fail to meet their burden of demonstrating commonality, and no class can reasonably be certified here. *Regence*, 291 F.R.D. at 612; *Dukes*, 564 U.S. at 350.

### B.   Plaintiffs Have Failed to Prove Predominance

The predominance analysis focuses on the relationship between common and individual issues in the case and tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation. *Townsend v. Monster Beverage Corp.*, 303 F.Supp.3d 1010, 1042 (C.D.Cal. 2018). "[T]he 'notion that the adjudication of common issues will help achieve judicial economy' is an integral part of the predominance test." *In re Wells Fargo Home Mortgage*, 571 F.3d 953, 958 (9th Cir. 2009). If the main issues in a case require individualized assessment, a Rule 23(b)(3) action is inappropriate. *Zinser*, 253 F.3d at 1190. "An individual question is one where members of a proposed class will need to present evidence that varies from member to member, while a common question is one where the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, classwide proof." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S.Ct. 1036, 1045 (2016) (citations omitted).

In this case, Plaintiffs have not provided evidence that common issues predominate. Instead, a determination as to whether hourly workers received meal breaks, rest breaks, and were properly paid for overtime work will require an evaluation of a multitude of individualized issues because there is no uniformity across the purported class members due to their individualized job positions, shift times, and the unique nature of their work place and job demands.

There is no uniformity across the purported class because the nature and timing of employee breaks varies by job position, duties, and area of work. While Garcia characterizes herself as a "production worker," her job duties involved office work rather than work on the production line or operating machinery at the La Mirada plant.

**OPPOSITION TO MOTION FOR CLASS CERTIFICATION - 2:19-CV-07798**

She states that she had difficulty taking meal or rest break periods because there was "no coverage" for her and states that employees were "not provided with a relief person to do their job." (Amber Garcia Decl., ¶ 8.) This contention, however, is directly contradicted by the statements given by other hourly production workers such as Bonilla, who stated that she typically takes both her rest breaks each shift, and takes these breaks when "a lead worker releases me and someone else covers me." (Bonilla Decl., ¶ 7.) The job duties of Bonilla, also a "production worker," include "operating filling and packing machinery," which requires "constant monitoring." She is therefore always relieved by another worker before she takes her rest and meal breaks. (*Id.*, ¶¶ 6-7.) Bonilla has never missed a meal break nor been interrupted during her meal breaks with work-related communications or tasks. (*Id.*, ¶ 8.) The divergence of the experience of these two production workers illustrates the lack of uniformity among the putative class, even within one department

Another example of the lack of cohesive issues to be presented is illustrated by the testimony of Edward Jindra, a production worker of approximately 19 years, who has job duties similar to the clerical work performed by Plaintiff Garcia and declarant Cerda. As a "scheduler" within the production department, Jindra sets the production schedule for various products manufactured at the La Mirada plant. (Jindra Decl., ¶ 5.) He explains that he generally takes his first break after the second hour of his shift, and the second break typically after lunch; he also states he has never missed a lunch break nor been interrupted during or prevent from taking a rest or meal break. (*Id.*, ¶¶ 7-9.) Despite the similarity of his duties to those of Plaintiff Garcia and declaration Cerda, his different experience demonstrates that even subclasses based on departments could not reasonably be certified for class treatment.

Alyssa Garcia, a production worker of more than two years, typically begins her shift early, at 5:00 a.m., and works until 1:30 p.m. (Alyssa Garcia Decl., ¶¶ 4-7.) She explained that she understands and has been informed of her entitlement to two rest break periods per day, but chooses to not take them "because I don't feel that I need

9

them." (*Id.*) Her job duties include processing paperwork and purchasing spare parts. (*Id.*) Quality control tech Alan Franco, who works the 12:30 p.m. to 9:00 p.m. shift, generally takes his first rest period after the second hour of work, but often chooses to not take his second break, despite being aware of his entitlement to it as well. (Franco Decl., ¶¶ 4-7.) Franco's job duties include testing products for compliance and examining labeling and packing. (*Id.*) On the other hand, another production quality tech with the same shift time and job duties, Jonathan Maldonado, generally takes his first rest break around the same time as Franco (the second hour), but also sometimes chooses to take his second rest break in the latter half of his shift. Maldonado has never felt pressured to not take his breaks nor had them interrupted by work-related tasks or communications. (Maldonado Decl., ¶¶ 4-8.)

Similarly, Jindra has never had inaccuracies with his overtime pay or time-records. (*Id.*, ¶¶ 10-11.) Alyssa Garcia stated that she has generally reviewed her paychecks and has never noticed any issues with the recording of her time or her pay. (Alyssa Garcia Decl. ¶¶ 4-11.)

Quality control technician Franco has never had issue with his overtime work not having been properly tracked or paid (Franco Decl. ¶¶ 10-11.) Maldonado recalls one occasion where his overtime pay was not properly calculated, but reports that he was immediately paid and his time record corrected upon notifying office manager Romy Collie. (Maldonado Decl., ¶ 10.)

Arica Bonilla had not found any instances in which she was not fully paid for hours worked. (Bonilla Decl. ¶¶ 4-11.) In her entire time of employment, Bonilla has only once encountered a clerical issue with her overtime pay or time-records, and upon her notifying La Mirada Office Manager Romy Collie, Bonilla's time-records were immediately and accurately corrected and paid. (*Id.*, ¶¶ 10-11.)

Beyond liability issues, courts must also consider damages and affirmative defenses when making predominance determinations. Plaintiff has the burden of presenting a workable damages model that would avoid the need for individualized

10

proof. *Comcast Corp. v. Behrend,* 569 U.S. 27, 34 (2013)*; Ginsburg v. Comcast Cable Com. Mgmt. LLC*, 2013 WL 1661483, *7 (W.D.Wash. 2013) ("must demonstrate a damages methodology"). Plaintiffs merely state their belief that damages will be easy to determine and provide no evidence of a damages model.[1] Absent a model, certification is inappropriate because individual damages issues would predominate. *Forrand v. Federal Express Corp.*, 2013 WL 1793951, *5 (C.D.Cal. 2013).

### C. Plaintiff Has Failed to Prove Typicality

As a general matter, "[t]he typicality requirement of Rule 23(a) ensures that the interests of the named plaintiff align with those of the class." *Regence*, 291 F.R.D. at 612. "To determine whether the named plaintiff's claims are typical, the court analyzes 'whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Id.* (*quoting Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)).

In this case, Plaintiff has introduced only her own declaration and that of her former co-Plaintiff, Veronica Cerda. Neither has articulated claims based on "the same course of conduct" that could apply to other class members not employed in the same departments in which they worked, and each instead focuses on her own unique circumstances. For example, Plaintiff Garcia declares that her supervisor interrupted her meal periods or rest breaks by texting her mobile phone or by waiting outside the restroom, which is obviously a description of Garcia's individual working experience with her supervisor. Garcia Decl, ¶ 9. She then declares that she observed "this" happening to other workers as well, but does not identify the conduct to which she refers, nor does she identify the other workers whom she observed suffering similar conduct, the departments in which they worked, or any other supervisors who engaged in the unlawful practices. At best, Garcia describes the experience of a worker in the

---

[1] Plaintiffs have provided no class damage calculations in their initial disclosures (despite Rule 26(a)'s requirements), discovery responses, and Motion.

**OPPOSITION TO MOTION FOR CLASS CERTIFICATION - 2:19-CV-07798**

production department at the La Mirada facility, but makes no showing regarding allegedly unlawful practices in the four other departments at La Mirada, the policies or practices at the Buena Park warehouse, which does not have a production line and therefore does not have production workers, or allegedly unlawful practices at the unionized facility in Hayward.

In *Quinlan v. Macy's Corp. Servs., Inc.*, a class representative's union membership compared to others in the putative class that were not a part of the union presented issues with typicality.  2013 WL 11091572, at *3 (C.D. Cal. Aug. 22, 2013 ) ("Even if Quinlan was not specifically targeted, his union membership alone renders him atypical of the vast majority of the purported class members."); *see also Romero v. Alta-Dena Certified Dairy, LLC*, 2014 WL 12479370, at *2 (C.D. Cal. Jan. 30, 2014) (class was not certified because, among other reasons, plaintiff could not meet typicality element because Labor Code violations could not be invoked by most putative class members who were part of a union and whose overtime payments were governed by a series of CBAs.)  Based on the evidence presented in support of the Motion, Plaintiff has not made a showing that her claims are typical of those in the putative class.

Cerda provides similarly thin and conclusory testimony.  She complains that routine understaffing resulted in her being unable to take a meal period or rest break more than 50% of the time, but makes no showing regarding the staffing of any other department or facility.  Neither she nor Garcia purports to have any basis for knowledge or experience regarding the Company's Hayward facility, and the proferred substitute for actual knowledge regarding classwide practices appears to be statements made with no foundation, such as "complaints about not getting meal periods and breaks were constant from the workers at all 3 facilities."  This testimony does not make a showing of typicality with the meaning of Rule 23(a).

Beyond these typicality issues regarding conduct and claims, a class representative is also not typical and "class certification is inappropriate" if their

**OPPOSITION TO MOTION FOR CLASS CERTIFICATION - 2:19-CV-07798**

claims are "subject to unique defenses that threaten to attract the focus of the litigation." *Regence*, 291 F.R.D. at 612. Here, Garcia (and Cerda prior to her separation from the case) make extensive allegations regarding gender and pregnancy discrimination, denial of statutory job leave, retaliation in violation of California law, and wrongful termination. Not only are Garcia's claims of wrongful termination likely to lead to employer defenses that could distract from the class claims, such as poor performance, attendance issues, and disputes regarding progressive discipline, Garcia's pursuit of her individual claims will inevitably be prioritized over the interests of the class at large. Accordingly, Garcia does not allege typical claims, and class certification is inappropriate under Rule 23(a) and the principles articulated in *Regence*.

### D. Plaintiffs Have Failed to Prove Superiority

Rule 23(b)(3) requires that "a class action [be] superior to other available methods for the fair and efficient adjudication of the controversy." There are many aspects to the superiority requirement, but the ultimate test is whether efficiencies can be achieved "without sacrificing procedural fairness or bringing about other undesirable results." Advisory Comm. on Rule 23, 39 F.R.D. 69, 102-03 (1966).

Under Rule 23(b)(3)(A), one aspect of the superiority requirement involves the interest of parties in controlling their own claims. Unlike the cases Plaintiff cites involving low wage workers who are intimidated and unlikely to pursue claims if they exist, California workers have demonstrated a willingness to pursue claims when they want to pursue them, whether through individual or class litigation. Here, however, workers from several departments at the La Mirada facility, including maintenance, production, and quality control attest that they were paid for all of the time they worked, and that they rarely (if ever) missed meal periods.

Under Rule 23(b)(3)(D), another aspect of the superiority requirement involves whether a class proceeding will be manageable. This analysis typically starts with an analysis of a proposed plan for managing the class action. *E.g.*, *Ginsburg*, 2013 WL

13

**OPPOSITION TO MOTION FOR CLASS CERTIFICATION - 2:19-CV-07798**

1661483, *7.  It is not enough to state that payroll or other records exist or that representative testimony can be offered:  Plaintiff must explain how the records or testimony can be used to prove class liability and class damages.  *E.g.*, *Brady v. Deloitte & Touche LLP*, 2012 WL 1059694, *6 n.3 (N.D. Cal. 2012) (need "a reliable basis for extrapolating" to the class).

Here, Plaintiff's counsel has provided no plan for proving liability or damages.  These claims are not manageable as a class action.  The purported issues that might prevent a production worker from taking a meal period or rest break, such as the need to monitor a machine or the inability to locate a replacement worker to provide relief, would not apply to an office worker in charge of shipping and receiving.  The issues identified by Veronica Cerda, a shipping clerk, are not likely to be presented in the Quality Control department, where workers are testing the purity of the water used to make the beverages or the adherence of the finished products to Company standards.  Plaintiff has not addressed the conditions applicable to warehouse workers, who are not governed by a production schedule.

For all of the foregoing reasons, the litigation is likely to splinter into individual determinations or small subclasses based on department or location (that may lack numerosity) and based on when or where the workers worked, what they did, how they were paid, and what they were paid.  *See, e.g.*, *Jimenez v. Domino's Pizza*, 238 F.R.D. 241, 253 (N.D.Cal. 2010).

Under Rule 23(b)(3)(C), a third aspect of superiority involves the question of efficiency and judicial economy.  There is none to be found in this case.  Class actions that require individualized determinations and splinter into small disputes are, by their nature, inefficient.  *See Hughes v. WinCo Foods*, 2012 WL 34483, *9 (C.D.Cal. 2012) (no superiority:  the "class proceeding would not promote greater efficiency because the class action would devolve into hundreds or thousands of 'mini-trials'; thus, the difficulties associated with pursuing these claims via a class action outweigh any benefits"); *Brown v. Fed. Express Corp.*, 249 F.R.D. 580, 587-88 (C.D. Cal. 2008) (no

**OPPOSITION TO MOTION FOR CLASS CERTIFICATION - 2:19-CV-07798**

superiority:  because of need for individualized proof, "class members would face many of the same difficulties in motivation and expenditure of resources that they would encounter in separate actions").

Plaintiff has not advanced any plan for addressing the lack of uniformity of the class claims, and the only conclusion that can be drawn from what has been presented is that each and every class member will need to be interviewed or deposed to determine whether they actually took their meal periods and whether such meal periods were uninterrupted, whether they began those meal periods prior to the commencement of their sixth hour of work, whether they were authorized to take rest breaks, whether they actually took rest breaks or were unable to do so due to work pressure, and whether any class member worked off-the-clock or had their hours manipulated by Company supervisors to avoid the payment of overtime.  Quite obviously class treatment would be extraordinarily inefficient in light of the variations in experience, and the mini-trials to be conducted within the action would defeat the very purposes of class treatment.

## IV.   <u>CONCLUSION</u>

For all the reasons outlined herein, the Court should deny the Motion.

K&L GATES LLP

Dated:  March 2, 2020

By: */s/ Saman M. Rejali*
Christopher J. Kondon
Saman M. Rejali
Jonathan D. Kintzele

Attorneys for Defendants Shasta Beverages, Inc., National Bevpak, and National Beverage Corp.

15

**OPPOSITION TO MOTION FOR CLASS CERTIFICATION - 2:19-CV-07798**

# <u>CERTIFICATE OF SERVICE</u>

I am employed in the county of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is: K&L GATES LLP, 10100 Santa Monica Boulevard Eighth Floor, Los Angeles, CA  90067.

On March 2, 2020, I served the document(s) described as:

**OPPOSITION TO MOTION FOR CLASS CERTIFICATION**
**DECLARATION OF ROMY COLLIE**
**DECLARATION OF ALYSSA GARCIA**
**DECLARATION OF ARICA BONILLA**
**DECLARATION OF EDWARD JINDRA**
**DECLARATION OF ALAN FRANCO**
**DECLARATION OF JONATHAN MALDONADO**

The undersigned certifies that the document listed above served on counsel of record for Plaintiff via the Court's CM/ECF system.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on March 2, 2020, at Los Angeles, California.

*/s/ Saman M. Rejali*

Saman M. Rejali

1

**OPPOSITION TO MOTION FOR CLASS CERTIFICATION - 2:19-CV-07798**