Daniel P. Stevens (SBN 164277)
ken@scmclaw.com
Heather McMillan (SBN 188939)
heather@scmclaw.com
STEVENS & McMILLAN
335 Centennial Way
Tustin, CA 92780
Tel.:   (714) 730-1000
Fax:   (714) 730-1067

Attorneys for Representative Plaintiff
AMBER GARCIA

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

AMBER GARCIA, on behalf of herself and other similarly situated non-exempt former and current employees,

                Plaintiffs,

v.

SHASTA   BEVERAGES,   INC., NATIONAL BEVPAK, NATIONAL BEVERAGE   CORP.   and DOES 1 through 50, inclusive,

                Defendants.

Case No.: 2:19-cv-07798 JWH (AFMx)

(LASC Case No.: 19STCV26045)
District Judge: Hon. John W. Holcomb

Action Filed:       July 26, 2019
Action Removed:  September 9, 2019

## CLASS ACTION

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RENEWED MOTION FOR CLASS CERTIFICATION AND REQUEST TO REOPEN DISCOVERY TO CONDUCT CLASS DISCOVERY**

[Filed concurrently with:
Notice of Motion;
Declaration of Daniel P. Stevens;
Declaration of Amber Garcia;
Proposed Order]

Hearing Date:     December 4, 2020
Hearing Time:     9:00 a.m.
Department:        2

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION AND PROCEDURAL TIME LINE. . . . . . . . . . . . . . . 1

II.   FACTUAL AND LEGAL BASIS FOR CLAIMS ASSERTED. . . . . . . . . 6

    A.    Missed Second Meal. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    B.    Unpaid Wages and Unpaid Overtime Wages Due to the Automatic

        Thirty Minute Deduction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    C.    Wage Statement Violations. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    D.    Unfair Competition. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    E.    Waiting Time Penalty. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    F.    Premiums.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

III.  PROPOSED CLASS AND SUBCLASS. . . . . . . . . . . . . . . . . . . . . . . . 9

    A.    Second Meal Period Subclass. . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    B.    Unpaid Wage Subclass. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

    C.    Unpaid Overtime Subclass. . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

    D.    Wage Statement Subclass. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

    E.    Failure to Pay Premiums Subclass. . . . . . . . . . . . . . . . . . . . . . 10

    F.    Unfair Competition Subclass. . . . . . . . . . . . . . . . . . . . . . . . . . 10

    G.    Terminated Employee Wait Time Penalty Subclass. . . . . . . . . . 10

IV.   LEGAL STANDARD. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

    A.    Motion to Renew. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

        (1)    New Law (Local Rule 7-18(b)). . . . . . . . . . . . . . . . . . . . . 11

        (2)    New Facts (Local Rule 7-18(b)). . . . . . . . . . . . . . . . . . . . 12

        (3)    Failure to Consider Material Facts (Local Rule 7-18(c)). . . . 14

            (a)    Second Meal Break Never Addressed in Ruling. . . . . . 14

            (b)    Automatic Thirty Minute Payroll Deduction not

                  Analyzed in Ruling. . . . . . . . . . . . . . . . . . . . . . . . . 15

    B.    Class Certification.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

1  V.      DISCUSSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

2          A.     Rule 23(a) Prerequisites. . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

3                 1.     Numerosity. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

4                 2.     Commonality. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

5                 3.     Typicality. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

6                 4.     Adequacy. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

7          B.     Rule 23(b) Requirements. . . . . . . . . . . . . . . . . . . . . . . . . . 19

8                 1.     Predominance. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

9                 2.     Superiority. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

10         C.     Ascertainability and Definiteness. . . . . . . . . . . . . . . . . . . . . 24

11 VI.     PLAINTIFF REQUESTS DISCOVERY TO BE REOPENED WITH

12         REGARD TO CLASS ISSUES. . . . . . . . . . . . . . . . . . . . . . . . . . . 25

13 VII.    CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

# TABLE OF AUTHORITIES

2

**Page**

3

**FEDERAL CASES**

4

*ABS Ent. v. CBS*
  908 F.3d 405(9th Cir. 2018). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

5

*Amchem Prods., Inc. v. Windsor*
  521 U.S. 591 (1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

6

7

*Armstrong v. Davis*
  275 F.3d 849 (9th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . 16

8

*In re Bayshore Ford Trucks Sales, Inc.*
  471 F.3d 1233 (11th Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . 10

9

10

*Blackie v. Barrack*
  524 F.2d 891 (9th Cir. 1975). . . . . . . . . . . . . . . . . . . . . . . 16, 23

11

*Chabner v. United Omaha Life Ins. Co.*
  225 F.3d 1042 (9th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . 8

12

13

*Consolidated Rail Corp. v. Town of Hyde Park*
  47 F.3d 473 (2d Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . 16

14

*Dilts v. Penske Logistics*
  267 F.R.D. 625 (S.D. 2010). . . . . . . . . . . . . . . . . . . . . . . . . 21

15

16

*Ellis v. Costco Wholesale Corp.*
  657 F.3d 970 (9th Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . 18

17

*Frlekin v. Apple*
  973 F.3d 947 (9th Cir. 2020). . . . . . . . . . . . . . . . . . . . . . 12, 19

18

19

*Gable v. Land Rover N. Am., Inc.*
  2011 WL 3563097 (C.D. Cal. July 25, 2011) . . . . . . . . . . . . . . . . . 16

20

*Hanlon v. Chrysler Corp.*
  150 F.3d 1011 (9th Cir. 1998). . . . . . . . . . . . . . . . . . . . 17, 18, 20

21

22

*In re NJOY, Inc. Consumer Class Action Litig.*
  120 F.Supp.3d 1050 (C.D. Cal. 2015). . . . . . . . . . . . . . . . . . . . 24

23

*Johnson v. California*
  543 U.S. 499 (2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

24

25

*Kamar v. Radio Shack Corp.*
  F.R.D. 387 (C.D. Cal. 2008). . . . . . . . . . . . . . . . . . . . . . . . . 20

26

*Kamm v. Cal. City Dev. Co.*
  509 F.2d 205 (9th Cir. 1975). . . . . . . . . . . . . . . . . . . . . . . . 19

27

28

iv

*Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v.*
   *Las Vegas Sands, Inc.*, 244 F.3d 1152 (9th Cir. 2001). . . . . . . . . . . . . . . . 24

*McKenzie v. Fed. Exp. Corp.*
   275 F.R.D. 290 (C.D. Cal. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Nguyen v. Baxter Healthcare*
   275 F.R.D. 596 (C.D. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*O'Connor v. Boeing N. Am., Inc.*
   184 F.R.D. 311 (C.D. Cal. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Schwartz v. Harp.*
   108 F.R.D. 279 (C.D. Cal. 1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Staton v. Boeing Co.*
   327 F.3d 938 (9th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20

*United Steel et al. v. Conoco Phillips* Co.
   593 F.3d 802 (9th Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Valentino v. Carter-Wallace, Inc.*
   97 F. 3d 1227 (9th Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 23

*Wal-Mart Stores, Inc. v. Dukes*
   564 U.S. 338 (2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17, 20

*Yokoyama v. Midland Nat'l Life Ins. Co.*
   594 F.3d 1087 (9th Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Zinser v. Accufix Research Inst., Inc.*
   253 F.3d 1180 (9th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

**STATE CASES**

*Brinker Rest. Corp. v. Superior Court*
   53 Cal. 4th 1004, 139 Cal. Rptr. 3d 315, 273 P.3d 513 (Cal. 2012) . . . . . 23

*Safeway, Inc. v. Superior Court*
   238 Cal.App.4th 1138 (2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 22

*Zavala v. Scott Bros. Dairy, Inc.*
   143 Cal.App.4th 585 (2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

**FEDERAL STATUTES**

Fed. R. Civ. P. 23(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16, 19

Fed. R. Civ. P. 23(a)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Fed. R. Civ. P. 23(a)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Fed. R. Civ. P. 23(a)(4). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Fed. R. Civ. P. 23(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 19

1  Fed. R. Civ. P. 23(b)(3). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 15, 16, 19, 20, 23, 24

2  Fed. R. Civ. P. 23(c)(1)(C). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

3  **STATE STATUTES**

4  Cal. Bus. & Prof. Code § 17200. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

5  Cal. Lab. Code § 203. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

6  Cal. Lab. Code § 226(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

7  Cal. Lab. Code § 226.7(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

8  Cal. Lab. Code § 512(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

9  **LOCAL RULES**

10  L.R. 7-18(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

11  L.R. 7-18(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S MEMORANDUM IN SUPPORT OF RENEWED MOTION FOR CLASS CERTIFICATION
2:19-cv-07798 JWH-AFM)

# I.    INTRODUCTION AND PROCEDURAL TIME LINE

Plaintiff Amber Garcia seeks to certify a class of current and former California hourly workers against her former employers, the named defendants. She brings this action under California wage and hour laws.

Plaintiff challenges the following defendant's policies: 1) their failure to permit a second meal break to hourly employees at their La Mirada and Buena park facilities who work more than ten hours; 2) their practice of automatically deducting 30 minutes from the time cards at their La Mirada and Buena Park facilities; and 3) their refusal to pay premiums for missed meals or breaks at their La Mirada and Buena Park facilities.

On July 26, 2019, Plaintiffs Amber Garcia and Veronica Cerda filed a complaint for damages against Defendants Shasta Beverages, Inc., National Bevpak and National Beverage Corp. ("Defendants") in Los Angeles Superior Court where they alleged the following individual and class claims: (1) Discrimination; (2) Failure to Prevent Discrimination; (3) Pregnancy Leave Violation; (4) Retaliation; (5) Family Medical Leave Violation; (6) Wrongful Termination; (7) Failure to Pay Wages; (8) Failure to Pay Overtime Compensation; (9) Failure to Pay Wages for Missed Meal Breaks; (10) Failure to Pay Wages for Missed Rest Breaks; (11) Failure to Provide Accurate Itemized Wage Statements; (12) Waiting Time Penalties; and (13) Unfair Competition. [Dkt. 1, Stevens Dec. ¶4]

On September 10, 2019, Plaintiff received notice by personal service that Defendants had removed the matter to the United States District Court, Central District of California.[Dkt. 1, Stevens Dec. ¶5]

On October 21, 2019, the Parties entered into a Joint Stipulation and requested relief from Central District Local Rule 23-3 which requires a motion for certification within 90 days. [Dkt. 15, Stevens Dec. ¶6]

On October 21, 2019, the Parties submitted a Joint Rule 26(f) Report. In the report the parties proposed July 20, 2020 as a filing deadline for plaintiff's motion for

1 | class certification. [Dkt. 14, Stevens Dec. ¶7]

2 |     On October 22, 2019, the District Court denied the Parties' request for relief
3 | from Rule 23-3, but lifted the discovery stay. In addition, the Court "extended" the
4 | Local Rule 23-3 deadline for Plaintiffs to file a class certification motion to February
5 | 7, 2020, which gave Plaintiffs 108 days to obtain necessary discovery for the motion.
6 | [Dkt. 16, Stevens Dec. ¶8]

7 |     On October 31, 2019, Plaintiffs propounded the following written discovery
8 | requests on Defendants: Request for Production of Documents, Set One,
9 | Interrogatories, Set One and Requests for Admissions, Set One. The discovery to each
10 | Defendant was identical and contained 78 production requests, 22 interrogatories and
11 | 14 requests for admissions that went to both Plaintiffs' individual and class claims.
12 | [Stevens Dec. ¶9]

13 |     Defendants were not able to provide the information requested in a timely
14 | manner asserting privacy concerns (pending *Belaire-West* notices) and the volume of
15 | information sought. In early December, Defendants proposed language for the
16 | *Belaire-West* notices. Plaintiff immediately confirmed agreement.  In late December,
17 | Defendant indicated they would be proceeding with a third party administrator to
18 | send out and manage the *Belaire-West* notices. [Stevens Dec. ¶10]

19 |     On January 20, 2020, the Parties submitted a second Joint Stipulation to extend
20 | the deadline for the class certification motion. The parties explained that plaintiff had
21 | propounded written discovery on October 31, 2019, but Defendants had not been able
22 | to gather documents or provide substantive responses because they were waiting for
23 | the third party administrator to complete the *Belair-West* notices to the putative class
24 | members, and Plaintiffs had not received the putative class list. The Parties again
25 | requested an extension on the deadline to file the class certification motion. [Dkt. 20,
26 | Stevens Dec. ¶11]

27 |     On January 21, 2020, the District Court *sua sponte* issued an Order to Show
28 | Cause why plaintiffs claims were properly joined and indicating an intent to drop one

1  of the plaintiffs from the case. No concerns regarding proper joinder had ever been
2  raised by Defendants. [Dkt. 22, Stevens Dec. ¶12]

3  On January 21, 2020, the District Court denied the second request to extend the
4  deadline for filing the class certification motion. The District Court chastised the
5  parties for failing to narrow class issues "*[a]t a time when this Court is faced with*
6  *eight vacancies and crushing case loads*" and suggested that the parties "consider
7  stipulating to remand the case back to State Court if they desired a more
8  accommodating and leisurely pace." [Dkt. 21, Stevens Dec. ¶13]

9  On January 24, 2020, the Parties submitted a third Joint Stipulation to request
10  additional time to file the class certification motion and provided additional details.
11  Specifically, the defendants noted that two similar class action complaints were now
12  pending and indicated potential prejudice to defendants, plaintiffs and the potential
13  class members, if the parties' request was not granted.  However, the District Court
14  again denied the Parties joint request for an extension to file for class
15  certification.[Dkt. 23, 24, Stevens Dec. ¶14]

16  On January 27, 2020 a notice of related case was filed identifying the other two
17  pending class actions. [Dkt. 25, Stevens Dec. ¶15]

18  On January 29, 2020, plaintiff submitted a request for extension of the deadline
19  for filing class certification and provided a detailed explanation of what discovery
20  was necessary and outstanding. In this request, plaintiff also advised that defendants
21  had still not provided the class list or the requested class discovery. [Dkt. 26, Stevens
22  Dec. ¶16]

23  On January 30, 2020, the District Court denied plaintiff's request, but it
24  extended the Local Rule 23-3 deadline to file for class certification by 17 days to
25  February 24, 2020 to allow the parties to meet and confer in an effort to narrow class
26  certification issues. [Dkt. 27, Stevens Dec. ¶17]

27  On February 6, 2020, after over 60 days of extensions granted, Defendants
28  served a response to Plaintiff's Request for Production of Documents, Set One.

1    However, the responses contained all objections. [Stevens Dec. ¶18]

2          On February 13, 2020, absent any request by Defendants, the District Court

3    dismissed plaintiff, Veronica Cerda, based on "misjoinder," even though plaintiffs

4    had advised the Court in response to the OSC, that both plaintiffs were hourly

5    workers at the same location, in the same department, under the same manager,

6    during the same time period, within the class period, had both experienced the same

7    type of wage issues as the class and had both alleged gender bias complaints to the

8    same manager, who then retaliated against both plaintiffs by terminating them on the

9    same day resulting in similar claims for FEHA retaliation and wrongful termination.

10   [Dkt. 29, Stevens Dec. ¶19]

11         On February 20, 2020, Defendants served supplemental objections and

12   responses to Plaintiff's Request for Production of Documents, Set One. However, the

13   Defendants did not produce any documents pertaining to the class claims, namely the

14   class list, time records and/or pay records. [Stevens Dec. ¶20]

15         On February 21, 2020, the Parties submitted a fourth Joint Stipulation and

16   request for a short extension of time to file the class certification motion. The Parties

17   notified the Court that the *Belair-West* notices had been sent out, the putative class

18   list was set to be disclosed to Plaintiff on or about February 26, 2020, and that

19   additional time was needed to analyze the data, conduct witness interviews and take

20   depositions. [Dkt. 30, Stevens Dec.  ¶21]

21         On February 24, 2020, the District Court denied the Parties' Joint Stipulation

22   for an extension of time, and plaintiff was forced to file a motion for class

23   certification without any putative class discovery. [Dkt. 32, Dkt. 31, Stevens Dec.

24   ¶22]

25         On February 24, 2020, Plaintiff filed the motion for class certification. In her

26   moving papers, Plaintiff again requested an extension of time to obtain necessary

27   discovery, including the class list, so she could identify and interview employees and

28   review employee records the Defendants could now presumably produce. [Dkt. 31,

1   Stevens Dec.  ¶23]

2        On March 2, 2020, Defendants filed their opposition to Plaintiff's motion for

3   class certification. [Dkt. 36, Stevens Dec.  ¶24]

4        On Thursday March 5, 2020 at 6:43 pm. Plaintiff finally received a list of class

5   members and phone numbers. [Stevens Dec. ¶25]

6        On March 10, 2020, plaintiff filed her reply brief in support of class

7   certification. [Dkt. 38, Stevens Dec. ¶26]

8        On March 18, 2020, plaintiff filed a supplemental reply brief and submitted 40

9   signed declarations she had managed to obtain from putative class members over the

10  preceding two weeks. [Dkt. 39, Stevens Dec. ¶27]

11       On March 30, 2020, after taking the matter under submission without oral

12  argument, the District Court issued its Order denying plaintiff's motion for class

13  certification. [Dkt. 44, Stevens Dec. ¶28]

14       On April 14, 2020, plaintiff filed a Petition for Permission to Appeal Order

15  Denying Motion for Class Certification with the United States Court of Appeals for

16  the Ninth Circuit. [Ct. App. Dkt. 1, Stevens Dec. ¶29]

17       On May 6, 2020, the Plaintiff took the deposition of the Person Most Qualified

18  for the defendants. While the deposition was not about class issues, some of the

19  defendant's responses were new facts that were germane to the class issues. [Stevens

20  Dec. ¶30]

21       On July 27, 2020, United States Court of Appeal for the Ninth Circuit issued

22  a one sentence Order denying the Petition for Permission to Appeal. [Ct. App. Dkt.

23  3, Stevens Dec. ¶31]

24       Since the District Court's denial of our motion for certification, Plaintiff has

25  discovered new facts and new law that justifies reconsidering the motion. Plaintiff

26  also asserts that the court in its initial ruling failed to consider material facts presented

27  to the court. In addition, plaintiff has narrowed some of the subclasses and eliminated

28  some of the proposed subclasses. [Stevens Dec. ¶32]

## II. FACTUAL AND LEGAL BASIS FOR CLAIMS ASSERTED

### *A) Missed Second Meal*

Employers must provide a second meal break of at least 30 minutes for all workdays on which an employee works more than 10 hours. *Labor Code Section 512(a).*

The company did not have a policy authorizing or permitting the workers to take a second meal break, although they did institute a policy allowing second meal break **after** they received this lawsuit. [Stevens Dec. ¶33, Exb. A, PMQ Collie Depo. 68:17-23, 70:23-74:10] In fact, it does not appear that they even knew that a second meal was a requirement as their Human Resource Manual under the section "Breaks" states "**The Company provides** its employees with two paid breaks in the standard workday... and a 30 minute unpaid lunch break during a normal work shift...If an employee is required to work three (3) or more hours in excess of the normal scheduled shift in a workday, they shall receive an additional break after two (2) hours of work beyond the end of their normal shift." [Dkt 36-1, Collie Dec. ¶7, Exb. A, page18]. The inclusion of a third rest break for employees working eleven hours or more in defendant's policy, but not a second meal period for those same workers, supports the notion that defendants did not understand they were legally obligated to provide a second meal period after the tenth hour.

Declarations from employees demonstrate this illegal policy convincingly. Plaintiff has attached her declaration and 22 witness declarations to this motion. These are the same declarations that were used in the first motion except we excluded declarations from the unionized employees at the Hayworth facility since we have excluded those employees from our proposed class. Out of the 22 witness declarations, 19 of them stated that they have often worked more than ten hour shifts. Out of those 19, ALL of them, plus plaintiff, stated that they did not get a second

1  meal break when they worked a shift over ten hours.[1] [Stevens Dec. ¶34, Exhibit B;
2  Garcia Dec. at ¶10]

3      **B) Unpaid Wages and Unpaid Overtime Wages Due to the Automatic Thirty**
4  **Minute Deduction**

5      IWC Wage Orders 1 and 9, subsection 7(A)(3), states that an employer is
6  required to keep accurate "time records showing when the employee begins and ends
7  each work period. Meal periods, split shift intervals and total daily hours worked shall
8  also be recorded. Meal periods during which operations cease and authorized rest
9  periods need not be recorded." Thus, under California law, it is the employer's
10 responsibility to keep accurate time records for meal periods.

11     This record keeping requirement ensures that meal periods are actually taken,
12 that they are at least thirty minutes long, and that they are taken within the time period
13 they are required to be taken. If it is not enforced, then unscrupulous employers
14 would be able to hide the evidence of their non compliance with meal laws.

15     Here, the defendant's Person Most Qualified admits they have a policy of
16 automatically deducting thirty minutes from time cards if the employee worked 5.5
17 or more hours. [Stevens Dec. ¶33, Exb. A, PMQ Collie Depo. 72:17-73:11]. A
18 majority of the 22 declarations were aware that they were having thirty minutes
19 automatically deducted from their time cards and a majority of the declarants declared
20 that they often didn't receive a lunch break. [Stevens Dec. ¶34, Exb. B] Plaintiff's
21 declaration also states her time cards had thirty minutes deducted each day and that
22 she often didn't receive a meal break. She also states that when she worked in the
23 front office, she was instructed to alter all of the time cards in this manner and that

24 _____

25     [1] In the original opposition, the defendant filed five declarations of hourly workers and one
26 from Office Manager Romy Collie. Not one of the declarations contested plaintiff's contention that
   the defendant had a policy not to give a second meal break. In fact, all five of the hourly workers
27 declared they received just one half-hour meal break per day even though they all admitted to
   working overtime. (Dkt. 36 Bonilla Dec., Franco Dec., Jindra Dec., Maldonado Dec., A. Garcia
28 Dec.).

PLAINTIFF'S MEMORANDUM IN SUPPORT OF RENEWED MOTION FOR CLASS CERTIFICATION
2:19-cv-07798 JWH-AFM)

1  she observed other front office staff doing the same. [Garcia Dec ¶7]

2      *C) Wage Statement Violations*

3      Labor Code section 226, subdivision (a), specifies the form and content of

4  paycheck stubs.  At the time wages are paid, employers must furnish each employee

5  with a separate statement containing a number of items, including "an accurate, dated,

6  itemized account, in indelible writing showing, among other things, the gross and net

7  wages earned, the total hours the employee worked, all deductions, the dates of the

8  pay period, the employee's name and identification number, the employer's name and

9  address, and all applicable hourly rates in effect during the pay period." *Zavala v.*

10 *Scott Bros. Dairy, Inc*., 143 Cal. App. 4th 585, 591 (2006).

11     This cause of action is subject to class action status for any deficiency that is

12 clear on the face of the document or from proof that the defendant was putting

13 incorrect hours on the pay statement because of their daily thirty minute automatic

14 deduction.

15     *D) Unfair Competition*

16     Section 17200 of the California Business and Professions Code prohibits

17 "unfair competition," which is defined as any "unlawful, unfair, or fraudulent

18 business act or practice." Under this law, an unlawful business practice includes and

19 incorporates violations of other laws so that said laws are independently actionable

20 under Section 17200. *Chabner v. United Omaha Life Ins. Co.*, 225 F.3d 1042, 1048

21 (9th Cir. 2000). This claim is based on the unlawful practices of the other claims and

22 to the extent this cause of action is based on those claims it should be certified if the

23 other claims are certified.

24     *E) Waiting Time Penalty*

25     Assuming that the court certifies a class for unpaid wages or unpaid overtime

26 wages, then those who are no longer employed would be entitled to a penalty that is

27 equal to thirty days of their pay. *Labor Code Section 203.*

28 //

*F) Premiums*

Employers who violate the meal or break period laws must pay premium wages of one hour of pay for each violation. Labor Code Section 226.7, subd. (c). Here the Person Most Qualified for the defendant admitted that she knew at least some of the employees were not getting all of their meals and/or breaks and that they did not have a policy to pay them premiums. [Stevens Dec. ¶33, Exb. A, PMQ Collie Depo. 72:2-16]

In addition, ALL twenty-two of our declarations indicate that the respective employees  routinely were prevented from getting their lawful breaks or lunches. Twenty  out of twenty-two of the declarations attached stated the employees never received a premium or one hour of pay for a break or meal violation, the other two were silent on the point. [Stevens Dec. ¶34, Exb. B] In accord, plaintiff declared that she routinely was prevented from getting her lawful breaks and lunches, she never received a premium, that she regularly observed employees being denied complaints, that she heard several times a week complaints from employees about not getting lunches and breaks, that she never processed nor was she instructed to process a premium for any employee while performing payroll functions for the defendant, and that she never observed any of the other staff performing payroll functions processing premiums. [Garcia Dec. ¶¶7-14]

## III.   PROPOSED CLASS AND SUBCLASSES

Plaintiffs requests that the court certify a Class comprised of and defined as:

All current and former hourly employees and/or non exempt employees who performed work for any or all of the defendants at either the La Mirada or Buena Park facilities during the time period of July 26, 2015, to the present;

The Plaintiffs further requests that the court certify the following subclasses:

**A.     Second Meal Period Subclass.**  All class members who were not authorized or permitted a second uninterrupted 30 minute meal period each time they worked over ten hours in a work shift and were not paid a premium in lieu thereof;

9

**B.     Unpaid Wage Subclass.** All class members who had an automatic thirty minute deduction from their time card and suffered a wage loss because they worked some or all of the time that was automatically deducted from their time card;

**C.     Unpaid Overtime Subclass.** All class members who had an automatic thirty minute deduction from their time card and suffered a wage loss, that would have been paid at an overtime rate had the deduction not been made, because they worked some or all of the time that was automatically deducted from their time card;

**D.     Wage Statement Subclass.** All class members who received an inaccurate wage statement during the class period.

**E.     Failure to Pay Premiums Subclass.** All class members who suffered damage as a result of the defendant's policy not to pay premiums for missed meals and missed breaks.

**F.     Unfair Competition Subclass.** All employees from Subclasses A, B, C, D or E who suffered damage as a result of any of those specific claims.

**G.     Terminated Employee Wait Time Penalty Subclass.** All employees from Subclasses B or C who suffered damages as a result of any of those specific claims and as a result of that were not properly paid all wages on termination or within 72 hours thereof.

**IV.    LEGAL STANDARD**

**A.     Motion to Renew**

An order that grants or denies class action can be altered or amended at any time prior to a final judgment in the case. *Rule 23(c)(1)(C)*; *In re Bayshore Ford Trucks Sales, Inc*, 471 F.3d 1233, 1254 (11th Cir. 2006).

Some judges in the Central District have held that a Renewed Motion for Class Certification is subject to Local Rule 7-18 for Reconsideration.[2] While other judges

---

[2] It should be noted that another local rule that affected class actions, Rule 23-3, was found to be incompatible with federal law. *ABS Ent. v. CBS*, 908 F.3d 405, 427 (9th Cir. 2018) [the court held that Judge  Anderson abused his discretion in enforcing the rule as to when motions for

10

in the Central District do not appear to require plaintiff to meet those requirements for renewing a motion for class certification (see eg. *Alvarez v. XPO Logistics Cartage, LLC,* No. 2:18-CV-03736-RGK-E (C.D. Cal. May 21, 2020). In any event, Plaintiff can easily satisfy Local Rule 7-18.

Local Rule 7-18 provides that a motion for reconsideration of a decision on any motion may be based on any one of the following grounds:

"(a) a material difference in fact or law from that presented to the Court before such decision that in the exercise of reasonable diligence could not have been known to the party moving for reconsideration at the time of such decisions, or

(b) the emergence of new material facts or a change of law occurring after the time of such decision, or

(c) a manifest showing of a failure to consider material facts presented to the Court before such decision."

Plaintiff asserts that this renewed motion qualifies for reconsideration under either (b) or (c).

### *(1) New Law (Local Rule 7-18(b))*

On March 30, 2020, Judge Anderson denied Plaintiff's motion for certification based on a failure to satisfy Federal Rule 23(b)(3)'s requirement that common questions of law or fact predominate over questions affecting individual members. Citing to two District Court cases[3] in his discussion of "Missed Meal Periods and Rest Breaks," Judge Anderson held that the five Declarations of hourly workers that defendant provided in its opposition evidenced that some of the employees were able to take meal and rest breaks ***without interference*** from Defendant and that some of the class members may have chosen to miss breaks or meals based on ***personal***

---

certification can be made too strictly].

[3] The *Ayala* case cited by Judge Anderson was actually certified seven months later as a result of a subsequent motion for renewal of certification. *Ayala v. U.S Xpress Enterprises, Inc*., No. EDCV 16-137-GW(KKX), 2017 WL 3328087, at *13 (C.D. Cal. July 27, 2017)

1 *preferences* and concluded therefore that individualized inquiries predominate. He
2 then cites to this reasoning in his decisions not to certify the other claims. [Dkt. 44
3 at 7-8]

4      Since then, on September 2, 2020, the 9th Circuit in *Frlekin v. Apple*, 973 F.3d
5 947, (9th Cir. 2020) considered a class action case involving whether time employees
6 spent waiting while their bags were searched was compensable time. Although
7 factually different, the defendant in *Frlekin* cited facts that raised issues similar to the
8 issues Judge Anderson relied on in his ruling on our case: that class members could
9 choose not to bring bags to work (**ie. *personal preference***), that some class members
10 were not subject to search because they did not bring bags to work, that some class
11 members were never required to participate in checks (**ie. *no interference from
12 defendant***), and that some class members worked in stores with remote break rooms
13 where they stored their belongings.

14      In response to these arguments, the 9th Circuit held "Those purported disputed
15 facts pertain solely to individual remedies, not to the main legal question as to class-
16 wide relief...those purported disputed facts are ***irrelevant*** to whether time spent by
17 class members waiting for and undergoing exit searches pursuant to the Policy is
18 compensable as "hours worked" under California law." *Id*. at 952, *emphasis added*.
19 Moreover, the court held that the court could resolve "any relevant factual disputes
20 as part of its ordinary determination of individual remedies, such as requiring sworn
21 claim forms." *Id*.

22      Thus, plaintiff asserts that the court in the original motion for certification was
23 forced to rely on guidance from other district court rulings and now that the 9th Circuit
24 has clarified the law, the court has an opportunity to reassess the original ruling in
25 light of *Frlekin*.

26                    ***(2) New Facts (Local Rule 7-18(b)***

27      On May 6, 2020, plaintiff deposed the defendant's Person Most Qualified,
28 Romy Collie.  During the deposition she admitted that Shasta had a policy of

12

1  automatically deducting thirty minutes from time cards if the employee worked 5.5

2  or more hours. [Stevens Dec. ¶33, Exb.A, PMQ Collie Depo. 72:17-73:11]

3  Previously, in her declaration in support of the opposition to the motion for

4  certification, Ms. Collie stated "During my time working at the La Mirada plant, **the**

5  **Company has never had any policy or practice of altering**, moving, manipulating

6  reducing or eliminating **overtime hours worked (or any other hours worked).**"

7  [Dkt 36-1, Collie Dec. ¶15]  Clearly, her declaration was intended to be misleading

8  since Defendants did have a policy of altering time cards as evidenced by her

9  subsequent testimony that the defendant deducted thirty minutes from the time cards

10 if the employee worked 5.5 hours or more. Judge Anderson relied on Ms. Collie's

11 declaration  in his ruling.

12     Ms. Collie also admitted in her deposition that during the plaintiff's tenure with

13 the defendants, they did not have a policy authorizing or permitting a second meal

14 period (although she states they have one in place now). [Stevens Dec. ¶33, Exb. A,

15 PMQ Collie Depo 68:17-23, 70:23-74:10]

16     Ms. Collie further admitted that although sometimes employees would tell her

17 they didn't get a lunch, Shasta did not have a policy that allowed her to pay them a

18 premium equal to one hour of wages if they missed a meal or rest break. [Stevens Dec.

19 ¶33, Exb. A, PMQ Collie Depo 72:2-16]

20     Ms. Collie also admitted during her deposition that at least on one occasion,

21 the Plaintiff told her in an email that she had not gotten a lunch and asked for her time

22 card to be adjusted. [Stevens Dec. ¶33,  Exb. A, PMQ Collie Depo. 109:17-111:7]

23 This testimony and evidence directly contradicts Ms. Collie's declaration in support

24 of the opposition to the original motion for certification wherein she stated "Amber

25 Garcia never complained to me that she had been unable to timely take uninterrupted

26 30-minutes meal breaks...or that she had not been properly paid for all hours worked."

27 [Dkt 36-1, Collie Dec. ¶12]

28 //

*(3) Failure to Consider Material Facts (Local Rule 7-18(c)*

Plaintiff asserts that the court in its initial ruling failed to consider material facts presented to the court related to the defendants' uniform policy to not allow plaintiffs who work more than ten hours to have a second meal period and their uniform policy of automatically taking thirty minutes off of every employees time card for their meal time regardless of whether they actually received a meal.

*(a) Second Meal Break Never Addressed in Ruling*

In its ruling, the court agreed that "Plaintiff's plethora of evidence...raise[d] some definite concerns about Shasta's working conditions..." [Dkt. 44 at 7]. However, in its discussion of the evidence, the court focused on the missed first meal periods and the missed breaks, and finding that there was some variation in the evidence--that some of the employees voluntarily skipped their breaks and some of the employees were able to take their meals and breaks without interference–the court held that individualized inquiries predominated.

However, the court failed to discuss or analyze the other plaintiff claim concerning the second meal breaks. Plaintiff specifically identified "First Meal Periods" as one section and "Second Meal Periods" as a different section of their supplemental reply brief. Specifically, the brief summarized the evidence for second meal violations as follows: "**Second Meal Periods:** 50 out of 68 (73.5%) of the employees interviewed stated they worked in excess of a 10 hours shift at least one time per week. 50 out of 50 (100%) did not receive a second meal period when they worked in excess of 10 hours." [Dkt. 39 - Plaintiff's Supplemental Reply Brief, p. 2, lines 16-20] As mentioned above, even the declarations from the defendant's five hourly employees stated they only received one lunch break a day. Thus, there was no individual variation as to this claim and it stands to reason that the court would have certified this issue had it addressed it in its ruling.

//

//

*(b) Automatic Thirty Minute Payroll Deduction not Analyzed in Ruling*

With regard to the automatic thirty minute payroll deduction, the court does in fact note that plaintiff was making two distinct arguments: "(1) Shasta has an illegal policy of altering time cards by automatically deducting 30 minutes of time from each employee's daily time records, and (2) Shasta had an illegal policy, for a 5-6 month period, of altering time cards to reduce or eliminate the overtime hours that employees worked." [Dkt. 44 at 8]  Yet, the court then only analyzes the second claim of altering time cards to reduce overtime (despite the fact that the plaintiff had already conceded the claim of altering time cards to reduce overtime in the Supplemental Reply brief based on the results of the interviews plaintiff's attorneys were able to get during the pendency of the motion). [Dkt. 44 at 8-9; Dkt. 39 - Plaintiff's Supplemental Reply Brief, p. 3, lines 24-25]

Had the court analyzed the thirty minute payroll deduction, it would have seen that the witness declarations and the declaration of Ms. Garcia were all in agreement that the employees in La Mirada and Buena Park were subject to an automatic thirty minute payroll deduction regardless of whether they had actually received a thirty minute lunch, and that the six declarations provided by the defendant did not dispute this point. Thus, the court would have certified the class had it considered and addressed this issue in its ruling.

**B.     Class Certification**

A motion for class certification involves a two-part analysis. First, the plaintiff must demonstrate that the proposed class satisfies *Rule 23(a)*'s requirements: (1) the members of the proposed class must be so numerous that joinder of all claims would be impracticable; (2) there must be questions of law and fact common to the class; (3) the claims or defenses of the representative parties must be typical of the claims or defenses of absent class members; and (4) the representative parties must fairly and adequately protect the class interest. *Fed. R. Civ. P. 23(a).*

Second, the plaintiffs must meet the requirements for at least one of *Rule*

15

1 | *23(b)'s* subsections. Under *Rule 23(b)(3)*, a plaintiff may certify a class if "questions
2 | of law or fact common to class members predominate over any questions affecting
3 | only individual members," and if "a class action is superior to other available
4 | methods for fairly and efficiently adjudicating the controversy." *Fed. R. Civ. P.*
5 | *23(b)(3)*.

6 | The plaintiffs have the burden to show that the class satisfies *Rule 23. Zinser*
7 | *v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001). *Rule 23* confers
8 | "broad discretion to determine whether a class should be certified, and to revisit that
9 | certification throughout the legal proceedings before the court." *Armstrong v. Davis,*
10 | 275 F.3d 849, 871 n.28 (9th Cir. 2001), abrogated on other grounds by *Johnson v.*
11 | *California,* 543 U.S. 499 (2005).

12 | The court may permit a class action to proceed if the court "is satisfied, after
13 | a rigorous analysis," that the *Rule 23* prerequisites have been met. *Wal-Mart Stores,*
14 | *Inc. v. Dukes*, 564 U.S. 338, 351. However, the district court need only form a
15 | "reasonable judgment" on each certification requirement "[b]ecause the early
16 | resolution of the class certification question requires some degree of speculation."
17 | *Gable v. Land Rover N. Am., Inc*., 2011 WL 3563097, at *3 (C.D. Cal. July 25, 2011)
18 | (*internal quotation marks omitted)*; see also *Blackie v. Barrack*, 524 F.2d 891, 901
19 | n.17 (9th Cir. 1975).

**V.   DISCUSSION**

**A.   Rule 23(a) Prerequisites**

**1.   Numerosity**

23 | Rule 23(a)(1) requires that "the class [be] so numerous that joinder of all
24 | members is impracticable." Fed. R. Civ. P. 23(a)(1). In the prior ruling, Judge
25 | Anderson found that plaintiff satisfied this requirement. [Dkt. 44 at 3]

26 | Defendant's Office Manager Romy Collie stated that the *current* number of
27 | employees in La Mirada and Buena Park facilities was 139 at the time of the original
28 | motion for certification. [Dkt. 36-1, Collie Dec. ¶4]  Numerosity is presumed where

16

the plaintiff class contains forty or more members. *Id. (Citing Consolidated Rail Corp. V. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995)). "Additionally, it is not necessary to state the exact number of class members when the plaintiff's allegations 'plainly suffice' to meet the numerosity requirement." *Id. (quoting Schwartz v. Harp.*, 108 F.R.D. 279, 281-82 (C.D. Cal. 1985)). Thus, the class meets the standard for numerosity.

### 2.   Commonality

*Rule 23(a)(2)* requires that the class share common questions of law or fact. Fed. R. Civ. P. 23(a)(2). "*Rule 23(a)(2)* has been construed permissively." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998), overruled on other grounds by *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338 (2011). "All questions of fact and law need not be common to satisfy the rule." *Id.*

"For purposes of *Rule 23(a)2)*, even a single common question will do." *Wal-Mart Stores v. Dukes,* 564 U.S. at 359 (2011). "What matters to class certification ... is not the raising of common 'questions'– even in droves–but, rather the capacity of a classwide proceeding to generate common answers are apt to drive the resolution of the litigation... [Citation.]" *Id*. at 350.

In the prior ruling, Judge Anderson found plaintiff satisfied the commonality requirement. [Dkt. 44 at 4]

The plaintiff alleges several common contentions that are of such a nature that they are capable of class-wide resolution. First, the defendant had a policy not to authorize or permit the employees to take a second meal break. Second, the defendant had a policy of automatically deducting thirty minutes from each employee's daily time records. Third, the defendant had a policy not to pay premiums to employees when required by law.

### 3.   Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." To meet the typicality requirement,

17

1 the plaintiff must show that: (1) "other members have the same or similar injury"; (2)
2 "the action is based on conduct which is not unique to the named plaintiffs"; and (3)
3 "other class members have been injured by the same course of conduct." *Ellis v.*
4 *Costco Wholesale Corp*., 657 F.3d 970, 984 (9th Cir. 2011). "Under the rules
5 permissive standards, representative claims are 'typical' if they are "reasonably co-
6 extensive with those of absent class members; they need not be substantially
7 identical." *Hanlon*, 150 F.3d at 1020.

8       Judge Anderson did not reach a decision on typicality, however, he indicated
9 he was "concerned" that: i) 76 out of the 350 proposed class members are subject to
10 a collective bargaining agreement and ii) that some of the proposed class members
11 may have differences in working experiences because they work in other departments.
12 [Dkt. 44 at 4]

13       As to his first concern, the Plaintiff is no longer seeking certification for the
14 Hayward facility which was the only facility that was unionized. [Stevens Dec.  ¶32,
15 Dkt 36-1, Collie Dec. ¶10.]

16       As to the second concern of the court, the concern was misplaced. During her
17 employment, Plaintiff worked as a Production Worker primarily, but also worked in
18 the office. [Garcia Dec. ¶¶2, 7] The conduct Defendant subjected Plaintiff to included
19 the defendant's refusal to provide her second meal periods, the defendant's automatic
20 thirty minute deductions from her time card without regard to her actual time, and the
21 defendants refusal to pay her premiums for missed meals and breaks. [Garcia Dec.
22 ¶¶7,9 10-12, 14] This is exactly the same conduct and damages that the proposed
23 class would be alleging.

24       There is no law and no case that remotely suggests that a class representative
25 must have the exact same supervisor, the exact same department, the exact same job
26 title, or the exact same job location as the rest of the class. It would defeat the very
27 idea of litigation by class representation. Cases would potentially need hundreds of
28 class representatives if this was the case, and it would certainly be inconsistent with

18

1  the court sua sponte dismissing one of the original class representatives from this case

2  as being unnecessary.

3      Moreover, the recent case, *Frlekin v. Apple*, 973 F.3d 947, (9th Cir. 2020), as

4  discussed above, clearly shows that the types of individual differences that the court

5  was referring to are irrelevant except for the purposes of determining the amount each

6  class member was damaged.

7            **4.    Adequacy**

8      Rule 23(a)(4) requires that the class representative "fairly and adequately

9  protect the interest of the class." Fed. R. Civ. P. 23(a)(4). Representation is fair and

10  adequate when the class representative and counsel (1) have no conflicts of interest

11  with absent class members and (2) will prosecute the action vigorously on behalf of

12  the class. *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003).

13      Judge Anderson did not address adequacy in his prior ruling.

14      Plaintiff has agreed to put the interests of the Class Members before her own

15  interests. [Garcia Dec.¶17; Stevens Dec.¶¶41,42] Plaintiff is also an adequate class

16  representative because she has personal experience with the claims of the lawsuit and

17  is familiar with the underlying facts. [Garcia Dec. ¶¶14, 15, 16; Stevens Dec.¶¶41, 42]

18      Plaintiff's counsel, Daniel Stevens and the law firm, Stevens & McMillan, have

19  specialized in representing plaintiffs in employment law cases for the past 20 years,

20  have experience in California wage-and-hour class action suits, and have been found

21  to be qualified class counsel in prior actions. [Stevens Dec. ¶¶ 35, 36, 37, 38, 39]

22      Accordingly, Plaintiffs respectfully submit that the class representatives and

23  class counsel are adequate.

24      **B.    <u>Rule 23(b)(3) Requirements</u>**

25      Because the proposed Class satisfies the Rule 23(a) prerequisites, the Court

26  must consider whether the proposed Class satisfies at least one of the Rule 23(b)

27  requirements. Here, Plaintiff seeks class certification under Rule 23(b)(3), which

28  allows for class actions when necessary to "achieve economies of time, effort, and

expenses, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results," *Kamm v. Cal. City Dev. Co.*, 509 F.2d 205, 211 (9th Cir. 1975).  To certify a class under Rule 23(b)(3), the plaintiff must show that (1) common questions of law and fact predominate over individual questions and (2) a class action is superior to other available methods to adjudicate the plaintiff's claims. Fed. R. Civ. P. 23(b)(3).

## 1.  <u>Predominance</u>

"The *Rule 23(b)(3)* predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1988), overruled on other grounds by *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011). "Implicit in the satisfaction of the predominance test is that notion that the adjudication of common issues will help achieve judicial economy." *Valentino v. Carter-Wallace, Inc.*, 97 F. 3d 1227, 1234 (9th Cir. 1996). A plaintiff's legal theory is determinative of whether common issues of fact predominate, not whether plaintiff's legal theory will prevail. *United Steel et al. v. Conoco Phillips* Co., 593 F.3d 802, 807-09 (9th Cir. 2010). Although some inquiry into the substance of the case may be necessary, it is improper to decide on the merits at the class certification stage. *Staton v. Boeing Co.*, 327 F.3d 938, 954 (9th Cir. 2003).

"When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022, overruled on other grounds by *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011).

Where the employer has a uniform policy that is uniformly applied the appropriateness of class certification is "easily established." *Kamar v. Radio Shack Corp.*, F.R.D. 387, 399 (C.D. Cal. 2008).

Plaintiff asserts that the Defendant's legal violations are the result of three

20

1  common policies and practices. As a matter of common policy and practice, at the La
2  Mirada and Buena Park facilities, the defendants deducted thirty minutes of time each
3  day from the employees' time cards regardless as to whether or not the employee took
4  a thirty minute lunch. As a matter of common policy and practice, at the La Mirada
5  and Buena Park facilities, the defendants did not permit or authorize employees to
6  take a second meal break if they worked more than ten hours. As a matter of common
7  policy and practice, the defendants did not pay premiums as required, even when they
8  were informed that employees had missed a break or meal.

9      Under California law, the District Courts have certified several classes
10 involving automatic thirty minute deductions for meals from employees time cards.
11 (See eg. *Dilts v. Penske Logistics*, 267 F.R.D. 625 (S.D. 2010) [motion to renew
12 certification granted after plaintiff narrowed class definitions]; *Nguyen v. Baxter
13 Healthcare,* 275 F.R.D. 596 (C.D. 2011).) Here the plaintiff has established through
14 witness declarations and the person most knowledgeable that defendant has this
15 policy. The evidence offered by the defendant in the original motion did not
16 contradict this evidence.

17     In addition, as discussed above plaintiff has established through the
18 defendant's personal most qualified as well as the declarations of the witnesses that
19 none of the employees who worked more than ten hours received a second lunch
20 break. There was no contradictory evidence offered by the defendant on this issue in
21 the original motion for certification.

22     The court in *Safeway, Inc. v. Superior Court* 238 Cal.App.4th 1138, 1159
23 (2015) found that if the petitioner could 1) establish there was a **practice of not
24 paying premiums** for missed breaks or meals, and 2) show a **significant number** of
25 their employees were missing them, then a class certification motion would be
26 satisfied on that basis with no further requirements needed.

27     The plaintiff does not need to show that all class members accrued unpaid meal
28 break premium wages, but "only that on a system-wide basis, [the defendants] denied

1  the class members the benefits of the compensation guarantee and enhanced
2  enforcement implemented by section 226.7." *Safeway* at 1159.

3       In our case, the Person Most Knowledgeable admits that they did not pay
4  premiums for missed breaks or meals. The plaintiff's time records show that she had
5  never been paid a premium, the numerous employees we interviewed and got
6  declarations from were never paid a premium, and if plaintiff had been able to do
7  class discovery, they likely would have found that no employee has ever been paid
8  a premium in the records as well. So the practice of not paying premiums is
9  established.

10       The second prong of the *Safeway* case is whether a significant number of
11  employees were missing the breaks or meals. Judge Anderson held there was a
12  "plethora of evidence" that raised "definite concerns about Shasta's working
13  conditions." [Dkt. 44 at 7]. The plaintiff has provided 23 declarations, including
14  plaintiff, and each of these employees declared that they consistently missed breaks
15  and meals and dig not get paid premiums. [Stevens Dec. ¶34, Exhibit B; Garcia Dec].
16  The five defendant declarations are silent on the premiums, and two of the five admit
17  they did not always get their lunches. Of course, the employer can always brow beat
18  a few employees to provide a declaration, but even if the declarations stood up to
19  cross examination, it doesn't change the fact that there are a significant number of
20  employees who are missing breaks or meals and that the failure to pay premiums was
21  a system wide policy.  Thus, under *Safeway*, the class should be certified as to the
22  defendant's refusal to pay premiums.

23       Moreover, the defendant's position that some of the employees voluntarily
24  waived their breaks or lunches does not prevent certification. "An employer's
25  assertion that it did relieve the employee of duty, but the employee waived the
26  opportunity to have a work-free break, is not an element that a plaintiff must
27  disprove." *Safeway* at 1159. The court held that such issues in meal break cases can
28  be managed using "representative testimony, surveys, and statistical analysis..."

22

1  *Safeway* at 1160.

2  It is for those reasons that the common issues identified by Plaintiffs
3  predominate over any individualized inquiries.

4  The above questions of fact and law are common to the entire Class. The only
5  issues that are not common to the Class relate to each employee's actual damages.
6  However, damages determinations are individual in nearly all wage-and-hour class
7  actions. *Brinker Rest. Corp. v. Superior Court*, 53 Cal. 4th 1004, (Cal. 2012) ("In
8  almost every class action, factual determinations of damages to individual class
9  members must be made. Still we know of no case where this has prevented a court
10 from aiding the class to obtain its just restitution. Indeed, to decertify a class on the
11 issue of damages or restitution may well be effectively to sound the death-knell of the
12 class action device."). Thus, it has long been understood that in the Ninth Circuit
13 "damage calculations alone cannot defeat certification. [Quite simply,] '[t]he amount
14 of damages is invariably an individual question and does not defeat class action
15 treatment.'" *Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1094 (9th Cir.
16 2010) (quoting *Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir. Cal. 1975).

17 Thus, since the only questions of facts and law that are not common to the
18 Class are damages questions, the common questions of facts and law predominate
19 over the individual questions.

20 **2.   Superiority**

21 In addition to predominance, Rule 23(b)(3) also requires courts to consider
22 whether a class action is a superior method of adjudicating the plaintiff's claims.
23 *Amchem Prods., Inc. V. Windsor,* 521 U.S. 591, 615 (1997). In effect, the superiority
24 requirement requires courts to consider whether "classwide litigation of common
25 issues will reduce litigation costs and promote greater efficiency." *Valentino v.*
26 *Carter-Wallace, Inc.*, 97 F.4d 1227, 1234 (9th Cir. 1996). In determining superiority,
27 courts must consider: (1) the class members' interest in prosecuting their actions
28 individually; (2) the extent and nature of pre-existing litigation by class members

23

1   concerning the controversy; (3) the desirability of concentrating the litigation in this

2   particular forum; and (4) the difficulties in managing the class action. Fed. R. Civ. P.

3   23(b)(3)(A)-(D). Here, the proposed Class satisfies the superiority requirement.

4       As to the first and second factor, there is no evidence we are aware of

5   establishing that individual proposed Class members have any interest in prosecuting

6   their cases individually or that there is any pre-existing litigation by proposed Class

7   members regarding this issue. The only cases we are aware of are two class action

8   lawsuits that were filed after this class action and that have not been certified [*Jaime*

9   *Garcia v. Shasta Beverages, Inc., et al.*, 2:19-cv-10222-PA-AFM, filed 10/22/2019,

10  and *Suleyda Farias v. Shasta Beverages, Inc., et al.*,19STCV398350, Los Angeles

11  Superior Court, filed 10/25/2019]. These factors therefore support certification.

12      As to the third factor, concentrating litigation in the Central District of

13  California is desirable here because the proposed Class consists only of California

14  employees alleging California state law claims in connection with conduct that

15  occurred in Orange, County California. See e.g*., McKenzie v. Fed. Exp. Corp*., 275

16  F.R.D. 290, 302 (C.D. Cal. 2011) This factor therefore supports certification.

17      As to the fourth factor, because this is a simple wage and hour case, with a

18  clearly defined class and clearly defined issues, it should not be difficult for the court

19  to manage as a class action.

20      Moreover, in light of the small size of the putative class members' potential

21  individual monetary recovery, class certification may be the only feasible means for

22  them to adjudicate their claims. See *Local Joint Exec. Bd. of Culinary/Bartender*

23  *Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1163   (9th Cir. 2001) ("If

24  plaintiffs cannot proceed as a class, some— perhaps most–will be unable to proceed

25  as individuals because of the disparity between their litigation costs and what they

26  hope to recover.") Thus, class certification is the superior method of adjudication.

27  **C.    Ascertainability and Definiteness**

28      "A class is sufficiently defined and ascertainable if it is 'administratively

feasible for the court to determine whether a particular individual is a member.'" *NJOY*, 120 F. Supp. 3d at 1091 (quoting *O'Connor v. Boeing N. Am., Inc.*, 184 F.R.D. 311 319 (C.D. Cal. 1998)).

In this case, like most wage cases, it is easy to determine who is in the class by looking at the defendants records and determining who worked for them during the relevant time period.

## VI.   PLAINTIFF REQUESTS DISCOVERY TO BE REOPENED WITH REGARD TO CLASS ISSUES

Plaintiff's written class discovery was objected to initially and then became moot when the motion for certification was denied. Plaintiff also needs to be able to conduct some class discovery by deposition. In addition, the parties need expert designation reopened so that plaintiff can designate an expert for the class claims.

## VII.  CONCLUSION

In conclusion, Plaintiff respectfully requests the Court to 1) Certify the Class and Subclasses; 2) approve the plaintiff Amber Garcia as Class Representative; 3) order and appoint attorney Daniel Stevens and the Law Firm of Stevens and McMillan as class counsel; and 4) reopen discovery for class issues including expert designations and expert discovery.


Respectfully submitted,

STEVENS & McMILLAN


Dated: November 6, 2020             By:     */s/ Daniel P. Stevens*
                                            DANIEL P. STEVENS
                                            HEATHER K. McMILLAN
                                            Attorney for Representative Plaintiff
                                            AMBER GARCIA

# CERTIFICATE OF SERVICE

*Amber Garcia v. Shasta Beverages, Inc., et al.*

2:19-cv-07798 JWH-AFM

I am over the age of 18 and not a party to the within action. I am employed in the County of Orange, State of California; my business address is 335 Centennial Way, Tustin, California 92780.

On the date set forth below, I caused to be electronically filed the following document(s) described as: **PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RENEWED MOTION FOR CLASS CERTIFICATION AND REQUEST TO REOPEN DISCOVERY TO CONDUCT CLASS DISCOVERY** addressed to the persons and addresses as stated:

[X]   **BY CM/ECF SYSTEM:** I caused the above-referenced document(s) to be sent by electronic transmittal to the Clerk's Office using the CM/ECF System for filing which generated a Notice of Electronic Filing to the CM/ECF registrants in this case listed below

> Christopher J. Kondon
> Saman M. Rejali
> Jonathan D. Kintzele
> Jonathan.kintzele@klgates.com
> K&L GATES LLP
> 10100 Santa Monica Blvd., 8th Fl.
> Los Angeles, CA 90067
> christopher.kondon@klgates.com
> saman.rejali@klgates.com
> Jonathan.kintzele@klgates.com
> TEL: 310-552-5000
> FAX: 310-552-5001
>
> *Attorneys for Defendant*

[X]   [Federal]   I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on November 6, 2020 at Tustin, California.

_____*/s/ Ken Ho*_____
Ken Ho