1  Daniel P. Stevens (SBN 164277)
   ken@scmclaw.com
2  Heather McMillan (SBN 188939)
   heather@scmclaw.com
3  STEVENS & McMILLAN
   335 Centennial Way
4  Tustin, CA 92780
   Tel.:   (714) 730-1000
5  Fax:   (714) 730-1067

6  Attorneys for Representative Plaintiff
   AMBER GARCIA

7

8              **UNITED STATES DISTRICT COURT**

9              **CENTRAL DISTRICT OF CALIFORNIA**

10

11 AMBER GARCIA, on behalf of        )  Case No.:    2:19-cv-07798 JWH (AFMx)
   herself and other similarly situated )
12 non-exempt former and current     )  (LASC Case No.: 19STCV26045)
   employees,                        )
13                                    )  District Judge:    Hon. John W. Holcomb
                     Plaintiffs,      )
                                      )  Action Filed:      July 26, 2019
14 v.                                 )  Action Removed:  September 9, 2019
                                      )
15 SHASTA   BEVERAGES,   INC.,       )  **CLASS ACTION**
   NATIONAL BEVPAK, NATIONAL         )
16 BEVERAGE CORP. and DOES 1         )  **DECLARATION   OF   DANIEL   P.**
   through 50, inclusive,            )  **STEVENS   IN   SUPPORT   OF**
17                                    )  **PLAINTIFFS'   RENEWED   MOTION**
                     Defendants.      )  **FOR CLASS CERTIFICATION**
18                                    )
                                      )  [Filed concurrently with:
19                                       Notice of Motion;
                                         Motion for Class Certification and Request
20                                       to Reopen Discovery;
                                         Declaration of Amber Garcia;
21                                       Proposed Order]

22                                       Hearing Date:      December 4, 2020
                                         Hearing Time:      9:00 a.m.
23                                       Department:        2

24

25

26

27

28

## DECLARATION OF DANIEL P. STEVENS

I, Daniel P. Stevens, declare as follows:

1.      I am an attorney licensed to practice law in the State of California, and I am also admitted to practice before the United States District Court for the Central and Eastern Districts of California.  I am senior partner at the law firm of Stevens & McMillan, attorneys of record for Plaintiff Amber Garcia.

2.      I have personal knowledge of the facts stated in this declaration and if called upon as a witness, I could and would competently testify to them.

3.      Pursuant to local rule 7-3, my partner Heather McMillan and myself had a meeting with counsel for Defendants, Christopher Kondon and Saman Rejali, on October 28, 2020, to discuss the substance of this motion and any potential resolution.

4.      On July 26, 2019, Plaintiffs Amber Garcia and Veronica Cerda filed a complaint for damages against Defendants Shasta Beverages, Inc., National Bevpak and National Beverage Corp. ("Defendants") in Los Angeles Superior Court where they alleged the following individual and class claims: (1) Discrimination; (2) Failure to Prevent Discrimination; (3) Pregnancy Leave Violation; (4) Retaliation; (5) Family Medical Leave Violation; (6) Wrongful Termination; (7) Failure to Pay Wages; (8) Failure to Pay Overtime Compensation; (9) Failure to Pay Wages for Missed Meal Breaks; (10) Failure to Pay Wages for Missed Rest Breaks; (11) Failure to Provide Accurate Itemized Wage Statements; (12) Waiting Time Penalties; and (13) Unfair Competition.

5.      On September 10, 2019, Plaintiff received notice by personal service that Defendants had removed the matter to the United States District Court, Central District of California.

6.      On October 21, 2019, the Parties entered into a Joint Stipulation and requested relief from Central District Local Rule 23-3 which requires a motion for certification within 90 days.

2

7.     On October 21, 2019, the Parties submitted a Joint Rule 26(f) Report. In the report the parties proposed July 20, 2020 as a filing deadline for plaintiff's motion for class certification.

8.     On October 22, 2019, the District Court denied the Parties' request for relief from Rule 23-3, but lifted the discovery stay. In addition, the Court "extended" the Local Rule 23-3 deadline for Plaintiffs to file a class certification motion to February 7, 2020, which gave Plaintiffs 108 days to obtain necessary discovery for the motion.

9.     On October 31, 2019, Plaintiffs propounded the following written discovery requests on Defendants: Request for Production of Documents, Set One, Interrogatories, Set One and Requests for Admissions, Set One. The discovery to each Defendant was identical and contained 78 production requests, 22 interrogatories and 14 requests for admissions that went to both Plaintiffs' individual and class claims.

10.     Defendants were not able to provide the information requested in a timely manner asserting privacy concerns (pending *Belaire-West* notices) and the volume of information sought. In early December, Defendants proposed language for the *Belaire-West* notices. Plaintiff immediately confirmed agreement.   In late December, Defendant indicated they would be proceeding with a third party administrator to send out and manage the *Belaire-West* notices.

11.     On January 20, 2020, the Parties submitted a second Joint Stipulation to extend the deadline for the class certification motion. The parties explained that plaintiff had propounded written discovery on October 31, 2019, but Defendants had not been able to gather documents or provide substantive responses because they were waiting for the third party administrator to complete the *Belair-West* notices to the putative class members, and Plaintiffs had not received the putative class list. The Parties again requested an extension on the deadline to file the class certification motion.

12.     On January 21, 2020, the District Court *sua sponte* issued an Order to

3

**DECLARATION OF DANIEL P. STEVENS IN SUPPORT OF PLAINTIFF'S RENEWED MOTION FOR CLASS CERTIFICATION**

2:19-cv-07798 JWH-AFM

Show Cause why plaintiffs claims were properly joined and indicating an intent to drop one of the plaintiffs from the case. No concerns regarding proper joinder had ever been raised by Defendants.

13.    On January 21, 2020, the District Court denied the second request to extend the deadline for filing the class certification motion. The District Court chastised the parties for failing to narrow class issues "*[a]t a time when this Court is faced with eight vacancies and crushing case loads*" and suggested that the parties "consider stipulating to remand the case back to State Court if they desired a more accommodating and leisurely pace."

14.    On January 24, 2020, the Parties submitted a third Joint Stipulation to request additional time to file the class certification motion and provided additional details. Specifically, the defendants noted that two similar class action complaints were now pending and indicated potential prejudice to defendants, plaintiffs and the potential class members, if the parties' request was not granted. However, the District Court again denied the Parties joint request for an extension to file for class certification.

15.    On January 27, 2020 a notice of related case was filed identifying the other two pending class actions.

16.    On January 29, 2020, plaintiff submitted a request for extension of the deadline for filing class certification and provided a detailed explanation of what discovery was necessary and outstanding. In this request, plaintiff also advised that defendants had still not provided the class list or the requested class discovery.

17.    On January 30, 2020, the District Court denied plaintiff's request, but it extended the Local Rule 23-3 deadline to file for class certification by 17 days to February 24, 2020 to allow the parties to meet and confer in an effort to narrow class certification issues.

18.    On February 6, 2020, after over 60 days of extensions granted, Defendants served a response to Plaintiff's Request for Production of Documents, Set

4

1   One. However, the responses contained all objections.

2   19.   On February 13, 2020, absent any request by Defendants, the District

3   Court dismissed plaintiff, Veronica Cerda, based on "misjoinder," even though

4   plaintiffs had advised the Court in response to the OSC, that both plaintiffs were

5   hourly workers at the same location, in the same department, under the same manager,

6   during the same time period, within the class period, had both experienced the same

7   type of wage issues as the class and had both alleged gender bias complaints to the

8   same manager, who then retaliated against both plaintiffs by terminating them on the

9   same day resulting in similar claims for FEHA retaliation and wrongful termination.

10   20.   On February 20, 2020, Defendants served supplemental objections and

11   responses to Plaintiff's Request for Production of Documents, Set One. However, the

12   Defendants did not produce any documents pertaining to the class claims, namely the

13   class list, time records and/or pay records.

14   21.   On February 21, 2020, the Parties submitted a fourth Joint Stipulation

15   and request for a short extension of time to file the class certification motion. The

16   Parties notified the Court that the *Belair-West* notices had been sent out, the putative

17   class list was set to be disclosed to Plaintiff on or about February 26, 2020, and that

18   additional time was needed to analyze the data, conduct witness interviews and take

19   depositions.

20   22.   On February 24, 2020, the District Court denied the Parties' Joint

21   Stipulation for an extension of time, and plaintiff was forced to file a motion for class

22   certification without any putative class discovery.

23   23.   On February 24, 2020, Plaintiff filed the motion for class certification.

24   In her moving papers, Plaintiff again requested an extension of time to obtain

25   necessary discovery, including the class list, so she could identify and interview

26   employees and review employee records the Defendants could now presumably

27   produce.

28   24.   On March 2, 2020, Defendants filed their opposition to Plaintiff's motion

5

1 for class certification.

2      25.    On Thursday March 5, 2020 at 6:43 pm. Plaintiff finally received a list

3 of class members and phone numbers.

4      26.    On March 10, 2020, plaintiff filed her reply brief in support of class

5 certification.

6      27.    On March 18, 2020, plaintiff filed a supplemental reply brief and

7 submitted 40 signed declarations she had managed to obtain from putative class

8 members over the preceding two weeks.

9      28.    On March 30, 2020, after taking the matter under submission without

10 oral argument, the District Court issued its Order denying plaintiff's motion for class

11 certification.

12      29.    On April 14, 2020, plaintiff filed a Petition for Permission to Appeal

13 Order Denying Motion for Class Certification with the United States Court of

14 Appeals for the Ninth Circuit.

15      30.    On May 6, 2020, the Plaintiff took the deposition of the Person Most

16 Qualified for the defendants. While the deposition was not about class issues, some

17 of the defendant's responses were new facts that were germane to the class issues.

18      31.    On July 27, 2020, United States Court of Appeal for the Ninth Circuit

19 issued a one sentence Order denying the Petition for Permission to Appeal.

20      32.    Since the District Court's denial of our motion for certification, Plaintiff

21 has discovered new facts and new law that justifies reconsidering the motion. Plaintiff

22 also asserts that the court in its initial ruling failed to consider material facts presented

23 to the court. In addition, plaintiff has narrowed some of the subclasses and eliminated

24 some of the proposed subclasses. Plaintiff has defined the class so that the unionized

25 employees of the Hayward facility are no longer part of the proposed class.

26      33.    On May 6, 2020, the plaintiff took the deposition of the Person Most

27 Qualified for the defendant companies, Romy Collie. Attached as Exhibit A are a true

28 and correct copy of certain pages from that deposition transcript.

**DECLARATION OF DANIEL P. STEVENS IN SUPPORT OF PLAINTIFF'S RENEWED MOTION FOR CLASS CERTIFICATION**

2:19-cv-07798 JWH-AFM

34.     Attached as Exhibit B, are true and correct copies of 22 declarations from employees of the defendants who worked at the La Mirada and Buena Park facilities. They are the same exhibits that were part of the original motion for certification, filed as part of the Supplemental Reply Brief, except that we took out the declarations from the Hayward employees as they are no longer members of the proposed class. For convenience, a summary of the declarations is as follows:

       a)    All 22 declarants stated that on a regular basis they did not get all of their legal breaks or meal periods.

       b)    22 out of 24 declarants stated that they never received premiums or one hour of pay for their missed breaks or missed meals. The other two declarations were silent on this point.

       c)    18 out of 22 declarants stated they received a 30 minute automatic deduction from their time sheet each day. The other four declarations were silent on the point, or said that their supervisor was responsible for their time sheet.

       d)    19 out of 22 declarants stated they worked shifts over ten hours on a regular basis.

       e)    All 19 of the declarants that worked shifts over ten hours stated that they never received a second meal break on the days they worked over ten hours.

35.     Proposed Class Counsel and my law firm are qualified to handle this litigation because we are experienced employment law practitioners and seasoned in matters involving complex employment litigation and class actions.

36.     I received my J.D. from Western State University College of Law in Fullerton, California in 1992.   I graduated *summa cum laude* and was class valedictorian.  During law school I was Chief Editor of the student newspaper.  I also interned for California Court of Appeals Justice Henry Moore.  I took the February 1993 California bar examination and became a member of the State Bar of California

7

1   in July of 1993.

2       37.    I have practiced law in California since 1993. I have been senior partner

3   of my own law firm from 1994 until the present. My firm currently has four attorneys

4   and five paralegals. As a firm, we have exclusively represented plaintiffs in

5   employment litigation since 2001. We have litigated approximately one thousand

6   employment cases during that period of time. My partner, Heather McMillan, has

7   been an attorney since 1997. She has been with my law firm practicing employment

8   law exclusively since 2002.

9       38.    I am an experienced trial attorney, having taken over 40 cases to trial.

10  I obtained a jury verdict in excess of $14 million, one of the ten largest verdicts for

11  a single plaintiff case in the State of California that year.  I have won many more six-

12  and seven-digit verdicts and judgments.

13      39.    I have been appointed as class counsel in several cases including, but not

14  limited to, the following cases: *Mason, et al. v. Farmers Insurance*, Los Angeles

15  County Superior Court Case No. BC233229,  *Perez v. The Limited Stores, Inc.*,

16  United States District Court for the Central District of California, Case No. SA CV06-

17  422-DOC (JTLx),  *Day  v. BJ's Restaurants, Inc.*, Orange County Superior Court

18  Case No. 06CC00030.

19      40.    In this case, the Class consists of approximately 200 people, making

20  joinder of all individuals impracticable.

21      41.    The Named Plaintiff's interest in the litigation is not antagonistic to the

22  Class.  She has no disabling conflict of interest.

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

**DECLARATION OF DANIEL P. STEVENS IN SUPPORT OF PLAINTIFF'S RENEWED MOTION FOR CLASS CERTIFICATION**

42.     Prosecution of this action on behalf of the Class will not be hindered by Named Plaintiff.  Her interest in the litigation is co-extensive with the interests of the Class. They have been damaged in the same manner by Defendant's conduct as the other Class Members. She seeks the same relief as other members of the Proposed Class.  Further, she is familiar with the facts and claims of the lawsuit and has agreed to serve as Class Representatives and has retained experienced counsel.

I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct.

Executed on November 6, 2020 at Tustin, California.

*/s/ Daniel P. Stevens*
Daniel P. Stevens

9

# EXHIBIT "A"

Romy Collie (PMQ), 5/6/2020
Amber Garcia v. Shasta Beverages, Inc.

1    presume that the temp agency was paying her and issuing

2    payroll through them; is that right?

3         A    Yes.

4         Q    Okay.

5              (Interruption in the proceedings.)

6              THE WITNESS:  If I could shut that off, I

7    would.  Sorry, guys.

8    BY MR. BERRY:

9         Q    Not a problem.

10             Take a look at the next page.  We're going to

11   go on to the policy on breaks.

12        A    Okay.

13        Q    All right.  And is this Shasta's policy

14   where -- under the heading "Breaks," is this Shasta's

15   policies on rest breaks?

16        A    This is on both rest breaks and lunch.

17        Q    Okay.  And does Shasta have a policy on second

18   meal periods?

19        A    We do have one in place now, yes.

20        Q    Okay.  But at least while Amber was there, you

21   would agree with me that there wasn't any policy for

22   second meal periods; correct?

23        A    That is correct.

24        Q    And if you look at the first sentence here of

25   the breaks, it says that "The Company provides its

                                                          68

Romy Collie (PMQ), 5/6/2020
Amber Garcia v. Shasta Beverages, Inc.

1   work at 4:00 -- excuse me -- at 4:00 in the morning

2   until their eighth hour, which could be 1:30; we have

3   day shifts that start as late as 9:00 and work their

4   eight-hour shift -- work a total of eight-and-a-half

5   hours with a half-hour lunch.

6          Q    Okay.  And the swing shift, what's the swing

7   shift?

8          A    Swing shift would start at 10:30, and again,

9   that could vary from 10:30 to 12:30 to 1:00, and they

10  would work their eight hours -- eight-and-a-half hours

11  of work with their half-an-hour lunch.

12         Q    And then the graveyard, what's that?

13         A    Graveyard would start at 8:30, and they would

14  work their through --

15              (Interruption in the proceedings.)

16              THE WITNESS:  The graveyard shift would start

17  at 8:00, and it could start as early as 5:00; if they're

18  working past the 8:00 time frame, it would automatically

19  put them at graveyard.  And they would work again their

20  eight hours and into the morning.  So it could be as

21  late as 3:00 or 4:00 in the morning.

22  BY MR. BERRY:

23         Q    Okay.  While Amber worked for Shasta, what was

24  the company's policy -- did the company have like an

25  unwritten policy on the second meal period?

                                                        70

Romy Collie (PMQ), 5/6/2020
Amber Garcia v. Shasta Beverages, Inc.

1      A    Again, I can't answer that.  I didn't have -- I
2   never reviewed that with anybody.
3      Q    Okay.  Well, who would be the best person to
4   know about that?
5      A    I guess I would be the best person to know
6   about it.  So the answer would be, no, there was no
7   written policy regarding second break.
8      Q    And was there an unwritten policy regarding a
9   second meal period?
10     A    No.
11     Q    Okay.  And I presume that Shasta did not have
12  Amber sign any second meal period waiver, did they?
13     A    No.
14     Q    Okay.  And if you look at the Breaks section,
15  the second sentence, it says, "If an employee is
16  required to work or be on call through their lunch
17  period, they must be paid at their regular rate for the
18  lunch period and at the overtime rate if they have met
19  the overtime requirements for the weekly work (or daily
20  overtime requirements where applicable)."
21          Was that -- or is that Shasta's policy with
22  respect to employees who are on call or work through
23  their lunch period?
24     A    We -- if anybody worked through their lunch
25  period, they would be paid for time worked.

71

Romy Collie (PMQ), 5/6/2020
Amber Garcia v. Shasta Beverages, Inc.

```
 1        Q    Okay.
 2        A    So, yes, that's why employees would come to me
 3    to tell me if they did not get their lunch for one
 4    reason or another.
 5        Q    Okay.  And I presume that Shasta did not have a
 6    policy where it paid them an additional hour of wage for
 7    working through that lunch period on top of the time
 8    that you would have paid them for that time they worked;
 9    is that correct?
10        A    That's correct.
11        Q    All right.  And the same thing with respect to
12    breaks, if employees missed their rest breaks, either in
13    the morning or the afternoon, Shasta did not have a
14    policy to pay them an hour premium wage for that missed
15    rest period; is that correct?
16        A    Correct.
17        Q    All right.  And if you look down at the second
18    paragraph, it says, "Please note that the Company
19    deducts a half-hour lunch if not specified on the
20    timecard and the employee did not punch in or out for
21    lunch."
22             That's essentially Shasta's policy saying that
23    they're going to automatically deduct the meal period;
24    correct?
25        A    Correct.
```

72

Romy Collie (PMQ), 5/6/2020
Amber Garcia v. Shasta Beverages, Inc.

1      Q   All right.  And this policy here is in
2   reference to the timecards.
3            Does Shasta have a policy with respect to the
4   new Kronos system and the time sheets?
5      A   It was the same -- it followed the same
6   guidelines.
7      Q   All right.  So it would automatically deduct no
8   matter what; right?
9      A   It would automatically deduct your eight hours
10   or your half an hour if you exceed five-and-a-half hours
11   of work.
12      Q   Okay.  And what was the significance of that
13   five-and-a-half hours?
14      A   You are required to take your break -- lunch
15   before the fifth hour on an eight-hour shift.
16      Q   All right.  And what happens with a 10-hour
17   shift in terms of -- or anything over 10 hours with
18   respect to the rest breaks?
19      A   New policy, we do require them to take their --
20   the second -- the third break if their -- and take their
21   second lunch before the fifth -- before the tenth
22   hour.
23      Q   Okay.  What about when Amber was there, there
24   was no policy on a third rest break, was there?
25      A   That's correct.

73

Romy Collie (PMQ), 5/6/2020
Amber Garcia v. Shasta Beverages, Inc.

1      Q    All right.  Take a look at page 20.

2      A    Okay.

3      Q    And specifically this references the Scheduled

4  Overtime and the Payment of Overtime.

5           Is this an accurate representation of Shasta's

6  policy on overtime pay?

7      A    Yes.

8      Q    Okay.  And have there been any modifications to

9  this policy that you're aware of?

10     A    No.

11     Q    Okay.  And does Shasta have a policy with

12  respect to an employee who works seven days in a row?

13     A    Yes.

14     Q    Okay.  And what's that policy?

15     A    That on the -- the seventh day of their

16  workweek, they will be paid double time for the whole

17  day.

18     Q    Okay.  And was that -- is that policy located

19  anywhere in this handbook?

20     A    No, it's based on labor law information.  And

21  I'm not sure if it's in this handbook at all.  I've not

22  come across it myself.

23     Q    Okay.  So is it your testimony that Shasta had

24  a practice of abiding by the seventh-day double-time

25  premium law?

74

Romy Collie (PMQ), 5/6/2020
Amber Garcia v. Shasta Beverages, Inc.

1    Yes.

2        Q   Okay.  But her duties didn't change, though;

3    right?

4        A   That's correct.

5        Q   Okay.  So prior to the shipping title, what was

6    her title?

7        A   You cut out completely.

8        Q   So prior to her shipping clerk title that was

9    changed in August of 2018, what was Amber's title before

10   that?

11       A   Production worker.

12       Q   Okay.  And so who was a production worker with

13   Amber around the time of this e-mail?

14       A   There was about 43 people.  That is a generic

15   position in our franchise for running the production

16   line.

17       Q   Okay.  Look at the second page of this e-mail.

18   She states "Also can you please adjust my time for

19   today?  I am about to clock out because as mentioned

20   early this morning I am not feeling well.  I did not

21   take a lunch break being that we are extremely busy.

22   Please adjust that I do not get deducted 30 minutes."

23           And so, basically, was the lunch going to be

24   deducted from her pay if she clocked out early, even if

25   she didn't take it?

                                                      109

Romy Collie (PMQ), 5/6/2020
Amber Garcia v. Shasta Beverages, Inc.

```
 1       A   So if she clocks out after the
 2   fifth-and-a-half-hour, it would automatically be
 3   deducted.  So she was asking it to be corrected, and
 4   that's where the statement up top -- further up says,
 5   "Please let me know if it's been adjusted."  And that
 6   was directed to Wendell.
 7       Q   Okay.  And, ultimately, she follows up about
 8   five days later.  And then you respond back the next
 9   day, on May 9th, and you say, "Please refresh my memory
10   on 5-3."
11           Do you remember that?
12       A   Yeah, probably because I didn't pick up that
13   bottom part that was highlighted in yellow.
14       Q   Okay.  And did you ultimately adjust her time
15   for that day?
16       A   I would assume I did adjust her time.  I would
17   have to physically look at the time -- I have a few
18   employees.  I would have to double-check on it.
19       Q   Okay.  And how would it show in the records if
20   you adjusted the time?
21       A   It would show my notation next to that date, or
22   it would show Wendell's notation next to that date, on
23   our digital time clock.
24       Q   Okay.  All right.  Well, we can look at that in
25   a little bit.
```

110

Romy Collie (PMQ), 5/6/2020
Amber Garcia v. Shasta Beverages, Inc.

1          And is there like a code that will appear in

2    the time records if you made that adjustment?

3          A   It all depends on what time she left.  So if

4    she left prior to the five-and-a-half hours, it would be

5    done automatically, and therefore, the lunch would never

6    have been taken out.  If not, it would either say cancel

7    lunch or a notation where there's a correction on it.

8          Q   Okay.  We'll look at that in a little bit.

9          Let's take a look at a document that was

10   previously marked Exhibit 43.

11         A   Okay.

12         Q   All right.  And do you recognize this document?

13         A   Just a second.  Let me open this up a little

14   bit more.

15         Yeah, this is a note from a doctor that she

16   could come back to work on 5-27, and only restricted to

17   six hours.

18         Q   Okay.

19         A   This is basically putting her back to work from

20   a temporary leave of absence --

21         Q   Okay.

22         A   -- with possibly a few days off.

23         Q   And it's your testimony that Shasta honored

24   those restrictions?

25         A   Yes.

111

# EXHIBIT "B"

# DECLARATION OF PHILLIP ARREDONDO

I, Phillip Arredondo, declare as follows:

1.     I am over the age of 18.  I have personal knowledge of the facts set forth in this declaration and could competently testify to them if necessary.

2.     I worked for Shasta Beverages ("Shasta") at the La Mirada facility for about seven months as a temporary worker, then about a year and seven months thereafter as a direct hire.  I was terminated in September 2019.  I was a Line Operator getting paid $24 per hour.

3.     I worked the swing and graveyard shifts.

4.     I never saw a posted schedule that listed when employees could take their breaks and lunches.

5.     I used the Kronos system to clock in and out.

6.     I was told by Shasta to only clock out for lunch if I was leaving the facility.  They said that if I was eating on site I did not have to clock out.

7.     Whenever I did not clock out for lunch, the company deducted 30 minutes of pay from me.

8.     However, I regularly missed my lunch breaks.

9.     Shasta did not tell me when I could take a lunch or break.

10.     On a 12 hour shift, I would get two to three breaks and one lunch total.

11.     I was never paid a premium of one hour of pay for breaks or lunches missed.

12.     I worked 7 days a week many times.  I once worked three months straight without a day off.

13.     I saw many times that my timecard was short and/or did not match the actual hours I worked.  I complained to human resources about it many times.

14.     When I was a temporary worker, my supervisor signed my timecard before submitting it to payroll.  Many times, I saw the supervisor alter my timecards.

1

# DECLARATION OF PHILLIP ARREDONDO

DocuSign Envelope ID: 9FD19A2F-BG29-4696-A431-FF8A3FEDB97E

15. The supervisors manually clocked workers in and out when Kronos was not working.

16. Between about October 2018 and April 2019, some employees and I were not paid overtime.  Our overtime hours worked were paid as straight time instead.

17. I complained about the missing overtime pay but I believe the company still owes me for those overtime hours.

I declare under penalty of perjury that the foregoing is true and correct. Executed on ___March 16, 2020___ at the city of ___Whittier___, California.

DocuSigned by:

_Phillip D._____
507070CB47F74FD...

Phillip Arredondo

**DECLARATION OF PHILLIP ARREDONDO**

# DECLARATION OF RAUL BARRAGAN

I, Raul Barragan, declare as follows:

1.     I am over the age of 18. I have personal knowledge of the facts set forth in this declaration and could competently testify to them if necessary.

2.     I worked for Shasta Beverages ("Shasta") at the La Mirada facility as a Maintenance Mechanic from 2013 to 2017. I was paid $27 per hour.

3.     I worked the overnight graveyard shift from about 8:00 p.m. to 6:00 a.m.

4.     I never saw a posted schedule that listed when employees could take their breaks and lunches.

5.     Although I punched in and out for my whole day of work, I did not punch out for lunches unless I left the facility for lunch. Most of the time, I did not punch out for lunch.

6.     Shasta deducted 30 minutes of my pay on each day I did not punch out for lunch. This happened all the time and was a regular occurrence.

7.     Shasta did not inform me when I could take my lunches and breaks.

8.     I frequently missed my 10 minute breaks. When skipping breaks, I barely had time to grab water and rush back to work. The supervisors would tell us to just go get water and come back to work right away.

9.     Most of the other workers experienced the same as me when it came to lunches and breaks.

10.     Whenever I worked more than 10 hours in a day, I never got my second lunch. During those days, I usually only got one or two short breaks to get water in the whole day. This happened about twice a week.

11.     I was frequently interrupted while taking my lunches with work-related questions. This happened to me about two to three times a week. I also saw the other maintenance staff get interrupted with work-related questions during their lunches.

///

///

**DECLARATION OF RAUL BARRAGAN**

DocuSign Envelope ID: B6576EA3-B646-44A0-86A1-2B61C2ECDA51

12.     Sometimes, I noticed my timecard did not reflect overtime that I worked. On several occasions, my paycheck was missing overtime pay. Sometimes my vacation time was missing as well. I complained about my incorrect time cards, missing overtime and vacation time several times.

I declare under penalty of perjury that the foregoing is true and correct. Executed on _____March 10, 2020_____ at the city of ____Downey____, California.

Raul Barragan

**DECLARATION OF RAUL BARRAGAN**

# DECLARATION OF RAYMOND BARRON

I, Raymond Barron, declare as follows:

1.      I am over the age of 18 and have personal knowledge of the facts set forth in this declaration, and could competently testify to them if necessary.

2.      I worked at Shasta Beverages ("Shasta") from late 2013 to late 2015.  I no longer work at Shasta.  I quit working at Shasta because of discrepancies in my pay.

3.      My job title was Maintenance Mechanic.  I was paid $25.00 per hour.

4.      I worked the day shift at the La Mirada facility.

5.      I never saw a schedule posted that listed when employees should take breaks or lunches.

6.      I did not clock in during my first year at Shasta.  After that, I clocked in. I did not clock in or out for lunches.

7.      Shasta automatically deducted 30 minutes from my pay for lunch each day that I worked regardless of whether I actually took a lunch.

8.      When I saw that my pay had been altered to reflect that a lunch had been taken when I had not actually taken one, I complained to management. They told me "don't be so rebellious."

9.      Supervisors would sometimes clock workers out, usually 2 or 3 times per week.

10.     When to take a break or lunch was up to each employee.  It depended on how busy the employee was.

11.     I would sometimes get in trouble for taking a lunch.  They would call me on the radio and tell me they were not happy with me.  This happened 1 or 2 times per week.

12.     I never took my 10-minute breaks at Shasta and did not see other persons take theirs either.

1

**DECLARATION OF RAYMOND BARRON**

13.    I would miss my lunches at least 2 or 3 times per week.  I observed other employees miss their lunches too, sometimes up to 80% of the time depending on their job positions.

14.    I worked over 10 hours per day at least 4 days per week.  I never received a second lunch on any occasion when I worked over 10 hours.

15.    On the days I did take lunches they were often interrupted with  work-related questions.  I was also "on call" during my lunches.

16.    I observed other workers being interrupted during their lunches up at 80% of the time during the week.

17.    I had to wait 6 hours or more to get my lunch every day.  I observed this happen to other employees too, but not as often - perhaps 80% of the time.

18.    I never received an hour's pay for having missed a break or meal.

19.    I complained to Shasta constantly concerning not getting my breaks and lunches, and weekly concerning my pay being shorted.  I was told "we will look into it."

I declare under penalty of perjury that the foregoing is true and correct.

Executed on ___March 10, 2020___ at the city of ___Los Angeles___, California.

Raymond Barron

2

**DECLARATION OF RAYMOND BARRON**

## DECLARATION OF SAMUEL CHAVEZ

I, Samuel Chavez, declare as follows:

1.    I am over the age of 18 and have personal knowledge of the facts set forth in this declaration, and could competently testify to them if necessary.

2.    I worked at Shasta Beverages ("Shasta") from January 2018 to June 2019.

3.    My job title was Maintenance Mechanic. I was paid $30.00 per hour.

4.    I worked at Shasta's Buena Park facility. My shift ran from 6:00 AM to 1:30 PM.

5.    I never saw a schedule posted that listed when employees were supposed to take their breaks and lunches.

6.    I clocked in and out for work each day, but I never clocked in and out for lunches because I was told not to. I was told that Shasta was paying us for our lunches.

7.    I do not know if Shasta was automatically deducting 30 minutes for lunch for each day that I worked.

8.    Shasta never told me when to take a break or lunch. I was usually too busy to take a break.

9.    I often worked through my lunches, as did all the Maintenance team. I lost 22 pounds within my first 2 months of working at Shasta.

10.    When I worked over 10 hours in a day I never received a second lunch.

11.    My lunches were interrupted every day and I was "on call" during lunch every day. Interrupted lunches were a problem with all Maintenance Mechanics.

12.    I often had to wait 6 hours before taking my lunches because there was too much work to do.

///

///

///

1

## DECLARATION OF SAMUEL CHAVEZ

DocuSign Envelope ID: AFA33656-D25E-4B55-AC29-E5B273047455

13.     I never received an hour's pay for any missed breaks or lunches.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on __March 10, 2020__ at the city of __Lakewood__, California.

Samuel Chavez

---

2

**DECLARATION OF SAMUEL CHAVEZ**

DocuSign Envelope ID: 8E381139-7945-4C2A-B1AC-EC89C5C987C4

## DECLARATION OF EDGAR ESCOBAR

I, Edgar Escobar, declare as follows:

1.      I am over the age of 18 and have personal knowledge of the facts set forth in this declaration, and could competently testify to them if necessary.

2.      I was hired to work for Shasta Beverages ("Shasta") at the La Mirada facility as a temporary worker in March 2016. In July 2016, I was hired directly by Shasta. I first worked in production, then shipping, and now I am currently employed as a maintenance mechanic. I earn $32 per hour.

3.      I normally work 6 days per week.

4.      About 30-45% of the time, I work 7 days a week.

5.      I have worked at least 21 days in a row on two or three occasions.

6.      My current shift is from 5:00 a.m. to 1:30 p.m.. I started working this shift about a month ago.

7.      Before working the shift that I do now, I used to work more than 10 hours a day. I worked more than 10 hours a day for about 2 years until a month ago.

8.      I have worked more than 12 hours a day about 15 times.

9.      On the days I worked more than 10 hours, I never got my second lunch.

10.      About two weeks ago, Shasta implemented new policies regarding lunches and breaks. Before this new policy, I had never seen a schedule posted indicating when employees should take their breaks and lunches. Shasta did not tell me when I could take my lunches and breaks.

11.      Before the new policy, I did not punch out for lunch. Whenever I did not punch out for lunch, the company deducted 30 minutes of pay from me everyday.

12.      About 40-50% of the time, I did not take my lunch until the very end of my shift. The rest of the time, I never took lunch until after the 6th hour of work. Nearly everybody else on my shift (the day shift) also took their lunches after their 6th hour.

///

1

## DECLARATION OF EDGAR ESCOBAR

13.　　Before the new policy, I was considered "on-call" during my lunches. I would be interrupted on my lunch to answer a work-related call about 75% of the time.  Now, I am interrupted during my lunch about once or twice a week.

14.　　In addition, I missed at least 1 break every day because I had too much work to do.  I have seen about three or four other workers miss breaks as well.

15.　　I have never received a one hour pay premium for missed breaks or lunches.

16.　　I have also been shorted on my overtime pay a few times.


I declare under penalty of perjury that the foregoing is true and correct.


Executed on ___March 15, 2020___ at the city of ___La Mirada___, California.


Edgar Escobar

**DECLARATION OF EDGAR ESCOBAR**

# DECLARATION OF MICHAEL ESQUER

I, Michael Esquer, declare as follows:

1.      I am over the age of 18 and have personal knowledge of the facts set forth in this declaration, and could competently testify to them if necessary.

2.      I started working for Shasta Beverages ("Shasta") 2½ years ago.  I am still employed at Shasta.

3.      My job title is Maintenance Mechanic.  I am paid $32.00 per hour.

4.      I work at the La Mirada facility in the first shift.

5.      Shasta just started posting a schedule listing when employees should take their breaks and lunches a couple of weeks ago.  Before that they did not post a schedule.

6.      I started clocking in and out for lunches about 3 months ago.  Prior to that the supervisor used to clock me in and out.

7.      A supervisor or lead will tell me when I am supposed to take a lunch.

8.      I have missed breaks because, when I have tried to take them, I have been threatened with a write-up.  This happens approximately 3 times per week.

9.      I see approximately 40% of the employees miss their breaks.

10.      Sometimes I have to work through my lunch or take it later in the day.  This happens 2 or 3 times per week.  This happens to other Maintenance Mechanics too.

11.      When I work over 10 hours I never receive a second lunch.  This happens once per week or so.

12.      My lunches are interrupted about once per week by work-related questions.

13.      I am "on call" during my lunches 2 or 3 times per week.

14.      I have had to wait 6 hours or more before being able to take my lunch.  This used to happen 3 or 4 times per week, but has decreased to 2 times per week.

1

# DECLARATION OF MICHAEL ESQUER

DocuSign Envelope ID: A95B0691-A145-4DA4-9E95-E0C661F2D371

1  Other Maintenance Mechanics have the same problem.

2      15.    I have not received a premium of one hour's pay for having missed a

3  break or lunch.

4      16.    I have complained to the lead supervisor, Paul Ibarra, about not getting

5  all of my breaks or lunches.  I was told "take it" but it would be too late in the day to

6  take one.

7      17.    I have complained to the supervisor or manager about not being paid

8  double time for working from Saturday to Sunday.  I was told that Sunday is the start

9  of a new week, so I am not entitled to double time.

10

11      I declare under penalty of perjury that the foregoing is true and correct.

12

13      Executed on <u>March 18, 2020</u> at the city of <u>La mirada</u>, California.

14

15

16      Michael Esquer

17

18

19

20

21

22

23

24

25

26

27

28

2

**DECLARATION OF MICHAEL ESQUER**

DocuSign Envelope ID: 304885BF-B1DB-4DB1-B305-B5676945C5CE

## DECLARATION OF CHRISTOPHER ESTRADA ZEPEDA

I, Christopher Estrada Zepeda, declare as follows:

1.    I am over the age of 18 and have personal knowledge of the facts set forth in this declaration, and could competently testify to them if necessary.

2.    I started working for Shasta Beverages ("Shasta") in June 2017 as a temporary worker. I was hired directly by Shasta after working for about six to eight months as a temporary worker. I am still employed at Shasta. My job is in Sanitation and I am paid $25.68 per hour. I work the graveyard shift from 8:00 p.m. to 4:30 a.m.

3.    I work 5-6 days per week. I generally work over 8 hours per day but at least 2-3 days per week I work over 10 hours per day but less than 12 hours per day.

4.    I use the Kronos system to clock in and out using my ID card and fingerprint.

5.    I have never seen a schedule posted that lists when workers should take breaks or lunches.

6.    Shasta also never told me when to take a lunch or break. In fact, I did not receive any breaks 2-3 days per week.

7.    Instead of actually taking lunch breaks to eat, many employees and I would just snack whenever we could. We had to wait over 6 hours at least 3-4 days per week before we can eat a snack due to the heavy workload that we were assigned.

8.    Until about two weeks ago, I did not clock out for lunches. I was told to just take my lunch and the company would clock out for me. Now, the company is making us clock out for lunches.

9.    Whenever I did not clock out for lunch, Shasta would deduct 30 minutes from my pay. This happened every day until about two weeks ago.

10.    Before the company started making us clock out for lunch, I missed about two lunches per week on average.

11.    I saw many of my co-workers not able to take their lunches and rest breaks.

1

**DECLARATION OF CHRISTOPHER ESTRADA ZEPEDA**

12.     I worked over 10 hours per day at least 2 to 3 times per week but I was never given a second lunch.  A couple of weeks ago, Shasta gave us a form to waive our second lunch.

13.     Shasta never paid me an hour of pay for missing a break or meal.

14.     I was "on call" during my lunch 5-6 days pe week. At least 3-4 days per week I was interrupted by work questions or told to go back to work, but Shasta still deducted 30 minutes from my time and pay.  My supervisor would also call and/or text me after my scheduled shift and demand that I come to work earlier or on my day off.  If I refused, I got in trouble.  My supervisor would became upset with me and schedule me to work for weeks days without a day off. Sometimes I worked 19 days without a day off.

15.     I also observed other employees being constantly interrupted during their lunches.

16.     During the holidays, the supervisors would manually clock workers in and out.  Sometimes, the hours on those time cards did not add up to what was actually worked.

17.     I have seen some of my time cards and at times the hours did not add up to the hours I actually worked.  Between about October 2018 and April 2019 and also in December 2019, I was working 7 days a week and did not get overtime or double time pay.

18.     I had to complain to my boss, human resources, and payroll about my missing overtime and double time pay.  At first, they were dismissive of my complaints, but eventually paid what was owed to me.

19.     During my employment at Shasta, I have worked 7-13 days in a row about 60% - 70% the time.

///

///

///

2

**DECLARATION OF CHRISTOPHER ESTRADA ZEPEDA**

20.     During my employment at Shasta, I have worked 14 days or more in a row about 30% the time.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on _March 16, 2020_____ at the city of __Whittier_____, California.

DocuSigned by:

8B2A781C92574A2...

Christopher Estrada Zepeda

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

3

**DECLARATION OF CHRISTOPHER ESTRADA ZEPEDA**

**DECLARATION OF ERIC GARCIA**

I, Eric Garcia, declare as follows:

1.      I am over the age of 18 and have personal knowledge of the facts set forth in this declaration, and could competently testify to them if necessary.

2.      I started working for Shasta Beverages ("Shasta") as a temporary worker in September 2016.  In March 2017, I was hired directly by the company.  I am still employed with Shasta.

3.      I work in Production at the La Mirada facility.  My pay rate is $23 per hour and my hours are normally 4:30 a.m. to 1:00 p.m.

4.      I have never seen a schedule posted that lists when employees can take breaks and lunches.

5.      Although I clock in and out for my shifts, I did not clock out for lunches until Shasta made a new policy about two weeks ago.

6.      Whenever I did not clock out for lunches, Shasta deducted 30 minutes of pay from me.

7.      I have had to miss my rest breaks while working on the production line because I did not have anyone to relieve me.  We had to keep the lines running even when it was time for our breaks.  I have witnessed other employees experience missed breaks for the same reason.

8.      I have missed between 5 and 10 lunches over the last two years.

9.      I have never received a one hour premium for missing a break or lunch.

10.     I have been interrupted while on lunch break with work related questions.  The interruptions are more frequent if nobody else is covering me on the line.

///

///

///

///

1

**DECLARATION OF ERIC GARCIA**

DocuSign Envelope ID: 8DD1C472-E4C2-4D13-8301-6A23FE865DEC

11.     I usually have to wait 6 hours or more before being able to take lunch.


I declare under penalty of perjury that the foregoing is true and correct.

Executed on _____ at the city of _____, California.

March 14, 2020

La Mirada

DocuSigned by:

**ERIC GARCIA**

Eric Garcia

---

2

**DECLARATION OF ERIC GARCIA**

## DECLARATION OF DAVID HALL

I, David Hall, declare as follows:

1.      I am over the age of 18.  I have personal knowledge of the facts set forth in this declaration and could competently testify to them if necessary.

2.      I began working for Shasta Beverages ("Shasta") around February 2019. I worked as a Maintenance Mechanic at the La Mirada facility on the second shift. I was paid $32.00 per hour.

3.      I no longer work for Shasta.  I left because, during the summer, Shasta wanted me to work 16  hours per day, 7 days per week.

4.      I never saw any posted schedules listing when employees should take their breaks and lunches.

5.      I clocked in and out to the facility each day, but I did not clock out for my lunches.

6.      Shasta automatically deducted 30 minutes from my pay for a lunch each day.

7.      My lunch breaks were often taken late or interrupted due to issues with the machines.  If a machine broke down or had to be fixed, I could not go to lunch until the repair was finished. I often had to stop my lunch to fix machines. They would call me on the radio and I would have to step away from my lunch break to address the crisis. I also observed others not getting their lunch breaks, going to lunch late or being interrupted during a break, because of machine breakdowns.

8.      I often had to wait 6 hours before getting a lunch because of breakdowns in the machinery.

9.      I never received an hour of pay for a missed break or lunch.

/ / /

/ / /

/ / /

/ / /

## DECLARATION OF DAVID HALL

DocuSign Envelope ID: 986218FA-1D88-4C45-9691-B49E4CG6591D

10. In early 2019 I noticed that my paycheck did not match up to what I thought I was owed. I complained that my pay had been shorted a couple of times by about fifteen or thirty minutes.

I declare under penalty of perjury that the foregoing is true and correct. Executed on ____March 13, 2020____ at the city of ____Signal Hill____, California.

DocuSigned by:

*David Hall*

C2DE66381AEB493...

David Hall

2

**DECLARATION OF DAVID HALL**

DocuSign Envelope ID: 2666CF66-47A5-45D2-8E99-8A3282705808

# DECLARATION OF JAMES JONES

I, James Jones, declare as follows:

1.      I am over the age of 18. I have personal knowledge of the facts set forth in this declaration and could competently testify to them if necessary.

2.      I worked for Shasta Beverages ("Shasta") at the La Mirada facility as a maintenance mechanic for about three to four months in 2018. I left because Shasta did not allow me to take breaks or lunches. I was getting paid $28 per hour.

3.      I worked the day shift. My usual hours were 6am to 4:30pm, but I usually worked over 10 hours. I worked six days per week, Monday through Saturday.

4.      I never saw a posted schedule that listed when employees could take their breaks and lunches.

5.      I used the Kronos system to clock in and out at the beginning and end of my shift.

6.      I was told by Shasta not to clock out for lunch. Shasta deducted 30 minutes of my pay even when I was not allowed to take my lunch.

7.      Shasta did not tell me when I could take a lunch or break. In fact, I was regularly not allowed to take my rest and meal breaks. When the machines went down, I had no choice but to continue working, because they did not want a disruption in production. When I tried to take a break or a meal, my manager would get mad and tell me to go back and finish my work. This happened everyday. I could only take one break per shift, if I got a break at all. I almost never was allowed to take a rest break and often missed lunch, or had to take it very late in the shift. This is why I resigned my employment.

8.      I also saw other employees in my crew and the production line not being allowed to take a rest break and meals.

9.      I missed lunch almost every shift, six days per week. If I did eventually get a lunch, it was six hours or more after my shift had started, and often when I tried

1

**DECLARATION OF JAMES JONES**

DocuSign Envelope ID: 2666CF66-47A5-45D2-8F69-0A3282705808

1   to take a late lunch the supervisor would get mad at me. Sometimes it would be time
2   to go home and they still had not allowed me to take a lunch. I always missed the last
3   break of the day as well.

4       10.     Whenever I did get to take a lunch I was interrupted by supervisors
5   telling me to go back to work because a machine was down.

6       11.     I also observed other employees' lunches being interrupted on a daily
7   basis.

8       12.     I usually worked over 10 hours in a shift, six days per week, and I was
9   never given a second 30 minute lunch break.

10      13.     I was never paid one hour pay for any missed breaks or lunches.

11      14.     I complained to my supervisor and to Human Resources about not being
12  allowed to take my breaks and lunches but nothing was done to fixed the problem.

13      15.     I also complained about my checks being short.

14

15  I declare under penalty of perjury that the foregoing is true and correct.

16  Executed on _March 17, 2020_ at the city of _La mirada_, California.

17

18

19  James Jones

20

21

22

23

24

25

26

27

28

2

**DECLARATION OF JAMES JONES**

DocuSign Envelope ID: 83C08F3A-B128-4438-B69D-0ED2452B338C

# DECLARATION OF JAVIER LLAMAS

I, Javier Llamas, declare as follows:

1.     I am over the age of 18 and have personal knowledge of the facts set forth in this declaration, and could competently testify to them if necessary.

2.     I have worked for Shasta Beverages ("Shasta") since November 2017. I was a temporary worker for the first 6 months. I work as a Machine Operator at the La Mirada facility, earning $25.60 per hour. I work the swing shift from 1:00 p.m. to 9:30 p.m., but I almost always work longer than my scheduled shift.

3.     About 30% of the time, I work 6 days a week. About 10% of the time, I work 7 days a week.

4.     I have never seen a schedule posted listing when employees should take breaks and lunches.

5.     I was not clocking out for lunch until the company changed its policy about a week and a half ago.

6.     Before the policy change, Shasta would deduct 30 minutes of pay from me every day.

7.     The company also did not tell us when we could take a break or lunch. The employees worked it out amongst themselves based on the workload.

8.     Over half the time, I take my breaks late. About 80% of the workers I see also take their breaks late.

9.     I work over 8 hours almost every day.

10.     I work over 10 hours a day about twice a week. I worked 14 hours about 3 weeks ago.

11.     When I work over 10 hours, I do not receive a second lunch. The company gave me a second lunch waiver to sign this week. Every employee I have seen who also works over 10 hours also did not get a second lunch, and was also given the waiver to sign.

///

1

## DECLARATION OF JAVIER LLAMAS

1   12.   I have seen about 80% of the leads get interrupted during their lunches.

2   I saw this every other day.

3   13.   I never received one hour of pay for any missed lunches or breaks.

4

5   I declare under penalty of perjury that the foregoing is true and correct.

6

7   Executed on ___March 16, 2020___ at the city of ___Anaheim___, California.

8

9

10                                          Javier Llamas

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

2

**DECLARATION OF JAVIER LLAMAS**

DocuSign Envelope ID: 985AA39B-1D7E-4805-8CA7-9492D9CF2EF1

# DECLARATION OF OLIVER LOPEZ RAMOS

I, Oliver Lopez Ramos, declare as follows:

1.  I am over the age of 18 and have personal knowledge of the facts set forth in this declaration, and could competently testify to them if necessary.

2.  I started working for Shasta Beverages ("Shasta) in February 2018 through an agency. I hired directly with Shasta on June 4, 2019. I am still employed with Shasta.

3.  I work in Production. My pay rate is $21.00 per hour.

4.  I work at the La Mirada facility on the swing shift, from 1:00 PM to 9:30 PM. I sometimes work 12 hours or more. When I do, I never get a second lunch.

5.  I have never seen a schedule posted that lists when employees should take their breaks and lunches.

6.  I clock in for work each day but I did not clock out for lunch until a week ago, when I was instructed to start doing so.

7.  Overtime work that I did between October 2018 and April 2019 was not paid properly. My paycheck would not add up to the hours I had worked.

8.  My time cards have sometimes been altered. I did complain to Shasta, which said it would look into it.

9.  My lunches are interrupted approximately 2 times per month for work-related questions. I have seen employees in the Quality Control department and mechanics also have their lunches interrupted.

10. I have never received a premium of one hour's pay for any missed breaks or meals.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on _____ March 12, 2020 at the city of _____ La Mirada, California.

_____
Oliver Lopez Ramos

1

**DECLARATION OF OLIVER LOPEZ RAMOS**

# DECLARATION OF FLOYD LUCERO

I, Floyd Lucero, declare as follows:

1.  I am over the age of 18.  I have personal knowledge of the facts set forth in this declaration and could competently testify to them if necessary.

2.  I have worked for Shasta Beverages ("Shasta") for about two years.  I drive forklifts and work on production line at the La Mirada facility.  My pay rate is $20.65 per hour and I normally work from 1:00 p.m. to 9:30 p.m.

3.  I have never seen a schedule posted that lists when employees should take breaks or lunches.

4.  I clock in and out every shift using my fingerprint.

5.  Up until about a week and a half ago, I never clocked out for my lunches. Since then, Shasta has made all employees clock in and out for lunches.

6.  When I was not clocking out for lunches, Shasta would deduct 30 minutes of pay from me.  This happened every day I worked.

7.  About once or twice a week, I am not able to take a lunch until after working for 6 hours.  This is due to the amount of work I am given.

8.  About once or twice a week, I am interrupted with work related questions while I am on lunch.

9.  I am frequently unable to take all of my breaks.  This happens about two to three times a week.  This is also due to the amount of work I am given.  I usually either have to be driving a forklift or manning the production line so there is not a lot of time to take breaks.  I have observed my coworkers in my department also missing breaks on a regular basis.

10.  When I am assigned to work on the production line, which is three to four days a week, I usually work over 10 hours a day.

11.  When I am assigned to drive forklifts, I always work over 10 hours a day.  On my forklift days, I miss at least one break a day.

///

1

## DECLARATION OF FLOYD LUCERO

DocuSign Envelope ID: 0A5E141B-14A8-410E-8797-7820E8525F20D

12. When I work over 10 hours in a shift I never receive a second lunch.

13. One time, I noticed I was not paid for overtime. I complained, but the company kept sending me to different supervisors and departments. They never resolved my complaint. I am still owed at least 10-15 hours of overtime pay.

14. I have never been given an hour of pay whenever I missed breaks or lunches.

I declare under penalty of perjury that the foregoing is true and correct. Executed on <u>March 16, 2020</u> at the city of <u>Whittier</u>, California.

Floyd Lucero

2

**DECLARATION OF FLOYD LUCERO**

# DECLARATION OF MICHAEL MARINEZ

I, Michael Marinez, declare as follows:

1.     I am over the age of 18 and have personal knowledge of the facts set forth in this declaration, and could competently testify to them if necessary.

2.     I started working for Shasta in July 2019. I am still employed at Shasta.

3.     My job titled is Maintenance Mechanic.

4.     I work at the La Mirada facility. My shift runs from 1:00 PM to 9:30 PM. I work 6 or 7 days per week.

5.     I have never seen a schedule posted that lists when employees should take their breaks and lunches.

6.     I clock in to work each day but have not clocked out for lunches until two weeks ago. Shasta told me and the other employees to start clocking out for lunch at that point. For lunches we are supposed to clock out at the 5th hour of our shift, but if we are busy we can take our lunch later.

7.     Shasta automatically deducts 30 minutes for lunch each day.

8.     Supervisors do clock workers out for lunches. I have also noticed that Payroll has changed my time card punches.

9.     Shasta does not let me know when I should take my breaks.

10.     I do not get all of my breaks. I get one break after 5 hours' work. I see other people in my department who also get just one break.

11.     I am unable to take my lunch around 4 times per week. I have also seen others in the Maintenance Department miss their lunches.

12.     I estimate 1 day per week in which I work over 10 hours. I never receive a second lunch when I work over 10 hours.

13.     While I am not "on call" during my lunches I am frequently interrupted during my lunches. Other Maintenance workers have the same problem.

14.     I have often had to wait 6 hours before taking my lunches. This also

1

# DECLARATION OF MICHAEL MARINEZ

DocuSign Envelope ID: 9F5E0DF2-B9BA-442F-9785-A2639E75C5B8

1  happens to other workers on my shift.

2      15.    I complained about not getting all of my breaks or lunches when I was

3  working nights in November and December of 2019.

4      16.    Shasta has altered my time card and as a result I have not received all of

5  my overtime hours.  If, for example, I was to start at 9:00 PM and punched in 6 or 7

6  minutes early Shasta changed the time to indicate I started at 9:00 PM anyway.

7      17.    I have worked 19 days straight with no days off.  I am aware of

8  employees at the La Mirada facility who have worked 20 days straight with no days

9  off.

10     18.    I have never received a premium payment of one hour's pay for any

11 missed breaks or lunches.

12

13     I declare under penalty of perjury that the foregoing is true and correct.

14

15     Executed on ___March 12, 2020___ at the city of ___Lake Elsinore___, California.

16

17     Michael Marinez
       B3CAA2FE4E064BC...

18     Michael Marinez

19

20

21

22

23

24

25

26

27

28

2

**DECLARATION OF MICHAEL MARINEZ**

DocuSign Envelope ID: CCE70517-97C3-445C-8042-EB18C929298E

## DECLARATION OF DAVID MILLER

I, David Miller, declare as follows:

1.  I am over the age of 18 and have personal knowledge of the facts set forth in this declaration, and could competently testify to them if necessary.

2.  I worked at Shasta Beverages ("Shasta") from December 2016 to March 2018.  I worked for the company through a temporary agency for the first 6 months and then was hired directly by Shasta.

3.  My job title was General Laborer.  I was paid $22.00 per hour.

4.  I worked the third shift at Shasta's La Mirada facility. My schedule was from 6:00pm to 2:00am, but at least five to six shifts per week I worked over ten hours in a day. I would work seven to thirteen days straight every other month and I worked fourteen days or more straight at least once.

5.  I clocked in with a timecard every day.

6.  I never saw a schedule posted that listed when employees should take their breaks or lunches.

7.  I did miss my lunch breaks a few times and observed other employees missing their lunch breaks at times too.

8.  I would know when I could take a break or lunch only when the team lead would release me to do so.  There was no set schedule for these.

9.  I got in trouble for trying to take a break or lunch at least 2 or 3 times per week.  If lunchtime came and no one was available to relieve me at my post I could not leave, because the machines could not be turned off.  Whenever I turned off the machines to try to take break or go to lunch, I would get yelled at and was not permitted to leave. I saw this happening to my coworkers as well.

10.  I often had to wait to take my lunch break until I was relieved by a team lead. At least twice per week I had to wait 6 hours or more to get a lunch break.  This also happened to other workers on my shift about one tenth of the time.

11  My lunches would also be interrupted by work-related questions a few

1

## DECLARATION OF DAVID MILLER

1  times per week.  I was basically "on call" during lunch, because I had to report back

2  to the production line if there was a problem.  I observed that the maintenance

3  workers were always on call at lunch and would often be called to come back to work

4  while they were on their lunch break.

5       12.  I usually worked over 10 hours each shift, but I never received a second

6  lunch break even when I worked over 10 hours in a shift.

7       13.  Almost every day I was unable to at least a 10-minute break every 2

8  hours, because no one was available to relieve me at my post. I observed my

9  coworkers have the same problem. They could not leave to take a break.

10       14.  When I complained to my supervisors about not getting all of my breaks

11  or lunches they tried to blame me, but I could not always take my breaks or lunches

12  because there was no one available to relieve me at my position and I would get

13  yelled at if I left without having someone there to take my place while I was at lunch

14  or on a break.

15       15.  I never received an hour of pay for any missed break or missed or late

16  lunch break.

17       16.  I worked overtime and was not paid correctly because the company

18  designated a different day of the week as the start date (Monday through Sunday

19  versus Sunday through Saturday.) There was a period when I worked 14 days straight

20  but did not receive double time pay.  I had to work these hours even though I was not

21  scheduled to do so.  The seventh day's pay was put onto the following week's

22  paycheck instead of paying double time.

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

**DECLARATION OF DAVID MILLER**

17.     I complained about my pay being short, but was told it was fine, even though I had not received the double time pay for the seventh day.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on <u>March 15, 2020</u> at the city of <u>Norwalk</u>, California.

DocuSigned by:

*DAVID MILLER*

9FBD907EBF8947B...

David Miller

---

**DECLARATION OF DAVID MILLER**

# DECLARATION OF DANIEL NEWMAN

I, Daniel Newman, declare as follows:

1.     I am over the age of 18. I have personal knowledge of the facts set forth in this declaration and could competently testify to them if necessary.

2.     I worked for Shasta Beverages ("Shasta") from September 2018 to December 2018. I am no longer employed at Shasta.

3.     I worked in Sanitation at the La Mirada location making $19.00 per hour. I worked the Graveyard Shift.

4.     I have never seen a schedule posted listing when employees should take their breaks and lunches.

5.     I clocked in to work each day but never clocked out for lunches.

6.     I would know when I could take a break or lunch because one of the leads would tell me when I was cleared to take one.

7.     There were occasions when I could not take all of my breaks. I estimate this happened approximately 3 times per month.

8.     My lunches were usually taken late after I had been on the job for more than 5 hours. Half the time, I got no lunch at all. I observed that this happened to other workers too but not as often as with me.

9.     If I was working more than 10 hours in a shift, I never received a second lunch.

10.     My lunch was occasionally interrupted by work-related questions approximately once per month.

11.     I did not receive a one hour premium pay for missing a lunch or break.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on _March 15, 2020_ at the city of _La Mirada_, California.

DocuSigned by:

_DANIEL NEWMAN_

0BD5033D8BB544F...

Daniel Newman

1

## DECLARATION OF DANIEL NEWMAN

DocuSign Envelope ID: 5082AFC0-A494-480F-8B61-E484AFC11E68

# DECLARATION OF GABRIEL OKABE

I, Gabriel Okabe, declare as follows:

1.     I am over the age of 18 and have personal knowledge of the facts set forth in this declaration, and could competently testify to them if necessary.

2.     I have been working at Shasta Beverages ("Shasta") for 3 years and I am still employed with the company. I started as a temporary worker for the first six months until June 2017, when I was hired directly by Shasta.

3.     My job title is Sanitation and I am paid $23.30 per hour.

4.     I work at the La Mirada facility. I work on the graveyard shift.

5.     I have never seen a schedule posted listed when employees should take their breaks or lunches.

6.     I clock in for work using a timekeeping system called Kronos.

7.     Punching in and out for lunches only started recently.

8.     Shasta automatically deducted 30 minutes for lunch each day until about 2 weeks ago.

9.     There have been a lot of concerns about the company changing the start day of the week so people do not get paid double time when they are working seven days straight. The company keeps changing the work week to start on a different day and then refuses to pay the correct amount of overtime for the seventh day of work. A lot of the employees are mad about this issue because Shasta does not pay double time. For example, two employees I am aware did not get double time for their seventh day of work in the last month or two.

10.     I am sometimes required to work the production line, often for months at a time during the busy seasons. When I am assigned to work the production line, I am basically required to be available any time I am not scheduled to work, just in case they need me. Oftentimes I will get called in at the last minute, less than an hour before a shift, and if I do not come in, I will be reprimanded. I have observed this happening to my coworkers as well.

1

# DECLARATION OF GABRIEL OKABE

DocuSign Envelope ID: 5082AFC0-A494-480E-8B64-E494AFC11E68

11.   I have experienced issues with being able to take breaks and lunches when I'm working the production line. When on the production line, I am allowed to take a break or lunch only when either the production lines are down or when someone lets me know there is someone there to relieve me.

12.   I have gotten in trouble for trying to take a lunch or break when I am working on the production line.

13.   When I have complained to the lead on the production line when I have not received all of my breaks or lunches, I have been told "we'll see if we can get help" – but no one would come.

14.   I am unable to take a 10-minute break every 2 hours if the production line is running.  This happens to other workers most of the time also.

15.   I miss my lunches 2 or 3 times per week when I am working on the production lines.  This has occurred for several months in 2018-2019.  I have also observed my coworkers on the production line missing lunch breaks.

16.   I usually work more than 10 hours in a shift and I never receive a second lunch break when I work over 10 hours in a shift.

17.   I have observed that other workers' lunch breaks are interrupted.  This happens often to the leads on the swing shift.

18.   When I am working on the production line I always have to wait 6 hours before getting my lunch break, if I get one at all.

19.   I have never received one hour's pay for missing a break or lunch.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on _____March 9, 2020_____ at the city of ____Buena Park____, California.

Gabriel Okabe

2

**DECLARATION OF GABRIEL OKABE**

DocuSign Envelope ID: FD552CE1-E758-4C13-8E69-5D824F34C26A

# DECLARATION OF CHRIS RAMIREZ

I, Chris Ramirez, declare as follows:

1.      I am over the age of 18 and have personal knowledge of the facts set forth in this declaration, and could competently testify to them if necessary.

2.      I started working for Shasta Beverages ("Shasta") in July 2017 in La Mirada. I was hired directly by Shasta after working for about ten months as a temporary worker. I am still employed at Shasta.

3.      I am a production worker and I am paid $22.21 per hour. I currently work the day shift from 4:30 p.m. to 1:00 p.m. In 2019, I worked the swing shift and worked over ten hours at least 3 days per week.

4.      I have never seen a schedule posted that lists when workers should take breaks or lunches.

5.      Until about two weeks ago, I did not clock out for lunches. Shasta would automatically deduct 30 minutes from my pay. This happened every day until about two weeks ago when Shasta told us that we needed to start clocking out for our lunches.

6.      During the holidays, Kronos was down and the supervisors would manually clock workers in and out. Sometimes, the hours on those time cards did not add up to what was actually worked.

7.      In 2019, I was unable to take my break every two hours. I had to wait about 3 hours before I could take my break. This happened about 3 times per week.

8.      I saw other employees not receive their breaks every two hours. People from the swing shift complained to me that they were too busy to take their breaks every two hours.

9.      In 2019, I worked over 10 hours per day at least 3 times per week but I was never given a second lunch.

10.      I saw other employees working over 10 hours in a shift and they too, were not given a second lunch.

1

**DECLARATION OF CHRIS RAMIREZ**

DocuSign Envelope ID: FD552CE1-E75B-4C13-8E69-5D824F34C26A

11. I am interrupted during my lunch about once per week by supervisors by work questions or telling me what they want me to do when I return from my break.

12. At least once every other month, I have to wait six hours or more to take my lunch.

13. I have never received a premium of one hour's pay for any missed breaks or meals.

14. During my employment, I complained at least twice to Shasta about my paycheck being short.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on ___March 16, 2020___ at the city of ___Long Beach___, California.

DocuSigned by:

_Chris R_____
2EC8DC562FDD403...

Chris Ramirez

**DECLARATION OF CHRIS RAMIREZ**

**DECLARATION OF JESUS RAMOS**

I, Jesus Ramos, declare as follows:

1.    I am over the age of 18. I have personal knowledge of the facts set forth in this declaration and could competently testify to them if necessary.

2.    I worked for Shasta Beverages ("Shasta") from October 2017 to April 2019. I was originally hired through a temp agency and was hired directly by Shasta in March 2018. I worked in Quality Control at the La Mirada facility. I was paid $28.13 per hour.

3.    For the first three months of my employment at Shasta, I worked 10 to 12 hours per day, 7 days per week and often was not permitted to take a lunch. I never received a second 30 minute lunch break when I worked over 10 hours.

4.    Thereafter, I worked the swing/split shift, which was from 1:00 p.m. to 9:30 p.m.

5.    I never saw any posted schedules listing when employees should take their breaks and lunches.

6.    I clocked in and out to the facility each day using Kronos, but I did not clock out for my lunches. I was instructed by Shasta not to clock in or out for lunch each day.

7.    Shasta automatically deducted 30 minutes from my pay for a lunch each day.

8.    Shasta made these automatic deductions even when I was unable to take a lunch break, such as during the first three months of employment when I was working 10 to 12 hours per day without a lunch.

9.    I continued to regularly miss lunches throughout my employment. I missed my first lunch sometimes and missed all of my second lunches whenever I worked more than 10 hours in a day.

10.    The other workers in my department missed lunches like I did.

**DECLARATION OF JESUS RAMOS**

11. Sometimes, I would be interrupted while taking lunch with a work related question. I saw others in my department get interrupted on lunch as well.

12. My coworkers and I sometimes had to work 6 hours before receiving our lunch breaks. Other times, we did not receive our lunch at all.

13. I never received an hour of pay for missing a break or meal.

14. I saw the supervisors manually clock workers out for lunches when Kronos was not working.

15. Shasta did not inform me when I could take a break.

16. I was frequently unable to take my 10 minute breaks on time. My breaks almost always came late and sometimes I could not take a rest break at all.

17. Other workers from my department were also unable to take their 10 minute breaks on time and sometimes they missed their breaks as well.

18. My pay was not always correct and I complained about the short pay to human resources.

I declare under penalty of perjury that the foregoing is true and correct. Executed on ___March 10, 2020___ at the city of ___huntington park___, California.

DocuSigned by:

95D6C5FAE52744F...

Jesus Ramos

**DECLARATION OF JESUS RAMOS**

**DECLARATION OF RANDY SANDOVAL**

I, Randy Sandoval, declare as follows:

1.      I am over the age of 18 and have personal knowledge of the facts set forth in this declaration, and could competently testify to them if necessary.

2.      I started working for Shasta Beverages ("Shasta") in September 2018. I was employed through an agency for 8 months before being hired directly by Shasta. I am still employed with Shasta.

3.      I work in Production.  My pay rate is $21.63 per hour.

4.      I work at the La Mirada facility.  I work in the morning shift from 4:30 AM to 1:00 PM.

5.      While my shift is technically 8 hours I have usually worked over 10 hours per day during the past year.  In the summer 12-hour days, 7 days a week schedules are common for me.

6.      I have never seen a schedule posted that lists when employees should take their breaks and lunches.

7.      I clock in for work every day.  I only started clocking out for lunches on February 25, 2020.  Before that time, Shasta automatically deducted 30 minutes for lunches.

8.      During my employment I estimate that I did not get my lunches 5 times, but Shasta still deducted the time automatically as if I had actually taken those lunchs.

9.      I did not receive all of my overtime pay during the period from Octrober 2018 and April 2019.  I complained to Human Resources about this but it took them 3 weeks to address the issue and it still was not resolved.

10.     A manager or supervisor has always signed my time card.  My time card has sometimes had mistakes where the times were not correct.  This usually occurred when I was being supervised by two different supervisors.

11.     The lead will usually tell me when I am allowed to take a break.  At other times I need to figure out the best time to take it myself.

1

**DECLARATION OF RANDY SANDOVAL**

DocuSign Envelope ID: 045AC79E-A932-439E-B6AE-3BE6A1865DCE

12.     I am not always able to take my breaks or I am unable to take them on time. I have observed this happening with my fellow employees as well.

13.     When I have worked over 10 hours in a day I have never received a second lunch.

14.     While my own lunches have not been interrupted by work-related calls, I have seen this happen to mechanics and line leads all the time.

15.     Waiting 6 hours to take my lunch happens 3, 4 or 5 times per week at Shasta. This has improved within the last 2 weeks.

16.     I have never received a premium of one hour's pay for any of the second lunches I have missed.

17.     When I do not get my breaks on time I complain to the lead, who in turn complains to the supervisor.

18.     Shasta has shorted me on my pay. For example, 3 weeks ago I worked a 7-day week, but my paycheck did not include any double-time. I complained to Shasta, which said a mistake had been made and that it would be corrected. It has not been corrected yet.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on ___March 14, 2020___ at the city of ___La mirada___, California.

DocuSigned by:

Randy Sandoval

**DECLARATION OF RANDY SANDOVAL**

DocuSign Envelope ID: 8DA6C414-7995-4A34-9059-4A53D6455CE3

# DECLARATION OF OSCAR VASQUEZ

I, Oscar Vasquez, declare as follows:

1. I am over the age of 18. I have personal knowledge of the facts set forth in this declaration and could competently testify to them if necessary.

2. I work for Shasta Beverages ("Shasta") at the La Mirada facility as a Lead Operator getting paid $22 per hour. I was hired on September 10, 2018.

3. I have never seen a posted schedule that listed when employees could take their breaks and lunches.

4. I use the Kronos system to punch in and out.

5. Up until last week, I did not punch in and out for lunch. The company recently started a new policy requiring us to punch in and out for lunch.

6. Before the new policy, the company deducted 30 minutes of pay from me every time I did not punch out for lunch.

7. Shasta also did not tell me when I could take a break or lunch before the new policy.

8. Before the new policy, I missed lunches a few times per week. I also saw other employees missing their lunches. I also missed a lot of my breaks.

9. For about the first four months of my employment, I was regularly working 12 hours per day, 7 days per week.

10. During that time, I never got my second lunch.

11. On those 12 hour days, I sometimes had to wait six hours before receiving my lunch. This happened a few times per week.

12. There have been at least three occasions where I was forced to skip all of my rest breaks and lunches because nobody else was present to watch the line. In those situations, I was barely able to use the restroom.

13. I have never been paid a one hour premium for missed lunches or breaks.

14. I was interrupted and asked work-related questions a handful of times while taking my lunch.

1

**DECLARATION OF OSCAR VASQUEZ**

DocuSign Envelope ID: 8DA6C414-7395-4A34-9059-4A53D6A55CE3

15.    I complained in November 2018 to my supervisor because I was not given my second lunch on three separate occasions. To my knowledge, the company never investigated my complaint.

16.    I also noticed that my timecards were being altered occasionally. The company was deducting hours that I had actually worked. I complained to the company every time I noticed and they would adjust my following paycheck to pay me for the hours they originally shorted me on.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on <u>March 11, 2020</u> at the city of <u>La Mirada</u>, California.

DocuSigned by:

*Oscar Vasquez*

39462FE264384 1B...

Oscar Vasquez

2

**DECLARATION OF OSCAR VASQUEZ**

## DECLARATION OF VERONICA CERDA

I, Veronica Cerda, am over the age of 18 and declare as follows:

1. I worked for Shasta Beverages, Inc. ("Shasta") from December of 2017 to May 1, 2019.

2. My job title was Shipping Clerk. I was paid hourly during my entire period of employment. I did clerical and general office work. My job duties included the following:

          a. Answering inbound calls;

          b. Scheduling appointments for carriers;

          c. Shipping orders; and

          d. Inventory.

3. I worked at three locations during my employment at Shasta: La Palma, Buena Park and La Mirada.

4. There were 3 shifts at Shasta. The shifts were Morning, Mid-day and Graveyard. The times of these shifts varied during my employment with the company.

5. My typical schedule at Shasta was from Monday through Friday, from either 7:30 a.m. to 4:30 p.m. or 8:00 a.m. to 5:00 p.m. I would occasionally work Saturdays or Sundays one or two times per month.

6. Attached to my Declaration as Exhibit "A" are pages from the Shasta Employee Handbook regarding meals and breaks. Page 15 (Hours of Work), "Meals and Breaks" specifically refers to posted schedules for meal and break periods, stating "[e]mployees should be prepared to resume work promptly at the end of their scheduled meal or break period. Please refer to posted schedules." Schedules for meals and breaks were never posted in the facility or online for any employees at the La Mirada or La Palma locations. Schedules were never posted in the facility or online for any of the shipping clerks at the Buena Park location.

7. I never clocked out for my lunch periods while at Shasta. I observed that

1

## DECLARATION OF VERONICA CERDA

1   Shasta did not require any of the employees to clock out for meal periods if they took
2   their meal period on Shasta's premises. Shasta used the Kronos system to keep track
3   of hours. I observed that the system they used was being manipulated to automatically
4   deduct 30 minutes each day from my time. I also observed that all of the employees
5   I worked with were also getting 30 minutes automatically deducted from their time
6   each day.

7       8.      I often was unable to take a meal period or break due to constant
8   pressure from the supervisors to get my work done and from routine under staffing.
9   In addition, when I would try to take breaks and meal periods, I would constantly be
10  interrupted and asked job related questions or asked to return to work early. I estimate
11  that I missed more than 50% of my breaks and even a higher percentage of my meals
12  were either missed or interrupted . In addition, sometimes when I did receive a meal,
13  I did not receive it until after the start of my sixth hour at work.

14      9.      Shasta never paid me a one hour premium for not getting an
15  uninterrupted meal period or missing a break. I never waived a meal period or signed
16  a meal period waiver.

17      10.     My job required me to walk throughout the facilities. Thus I was in a
18  perfect position to note who was getting breaks and meal periods and to hear
19  complaints. It was communicated to me verbally, and also observed by me, that many
20  people other than me were also missing their meal periods and breaks.  This was
21  communicated to me or observed by me every day.  I personally would see at least
22  half a dozen workers miss their meal periods each day and even more people miss
23  their breaks.

24      11.     Complaints about not getting meal periods and breaks were constant
25  from the workers at all 3 facilities.  Several of the workers were attempting to get
26  Shasta unionized because of continuing problems with this.  Shasta's La Mirada
27  facility is a production facility, which means that machines need to be manned 24
28  hours a day, 7 days a week. Persons could not leave the machines they were running

2

**DECLARATION OF VERONICA CERDA**

1 to take meals or breaks because the machines needed to be manned and the company
2 did not have a system to relieve workers.

3     12.    There was a high volume of work to be done at all of the facilities, and
4 not enough staff to do it, thus there was no way that breaks and meals could be taken
5 on an uninterrupted basis if they were taken at all. There were constant calls on the
6 intercom or walkie-talkies even when we were in the restroom, asking where we were
7 while we were on break. The pressure to be at one's station was constant.

8     13.    Regarding overtime, from about November 1, 2018 to March 31, 2019,
9 I noticed that the company changed the way they processed overtime. Before this time
10 period, I generally received premium pay for all of the overtime I worked. However,
11 from November of 2018 until around March 31, 2019, I noticed that the time cards
12 were being adjusted to either cut out all of my overtime hours or reduce them to a
13 very small amount, thus resulting in me not getting paid for the majority of the hours
14 that I worked beyond 8 hours in a day and beyond 40 hours in a week. .

15     I declare under penalty of perjury of the laws of the State of California that the
16 foregoing is true and correct.

17     Executed on February 23, 2020 at Fullerton, California.

18

19 _____

20     Veronica Cerda

21

22

23

24

25

26

27

28

3

**DECLARATION OF VERONICA CERDA**

Case 2:19-cv-07798-PA-AFM Document 31-06-2 Filed 02/24/20 Page 9 of 9 Page ID #:273

# EXHIBIT A

## Loss of Continuous Company Service

The following actions will result in a loss of, or break in, Continuous Company Service:

- **_Resignation_**
  Resignation by an employee will constitute a break in continuous service.
- **_Voluntary Absence of More Than Three Days_**
  An employee who is absent without prior approval of the Company and does not call into work for three (3) consecutive days will be considered a voluntary resignation (job abandonment). If you must be absent, you must be sure to notify your supervisor or Plant Manager prior to the start of your scheduled shift. If notification is later than the third day of the absence, you will lose your service date and have a break in continuous service and may not be eligible for re-hire.
- **_Termination_**
  Termination of employment by the Company will result in a break in continuous service.
- **_Layoff of More Than Twelve Months_**
  Employees who have completed their probationary period at time of layoff may retain their service for no more than 12 months while on layoff.
- **_Failure to Report to Work After Notice of Recall_**
  Notices of recall from layoff will be made by telephone or via the U.S. Postal Service (certified mail, return receipt requested). Such notices will be made to the last telephone number or address that you provided to the Company. You are required to provide your location with a current address and telephone number where you may be reached to respond to a recall. After receipt of a recall notice, you have three (3) work days to respond. Failure to respond within three (3) work days will cause a loss of the recall opportunity and continuous service. If for any reason you cannot report for work immediately when you receive a notice of recall, you should contact your Plant Manager as quickly as possible to determine what arrangements can be made.
- **_Overstaying a Leave of Absence_**
  Failure to report for work within three (3) work days of the scheduled return date from a leave of absence or other violations of the terms of the leave will cause a loss of continuous service and will be considered a voluntary resignation.

# D. HOURS OF WORK

## Work Week

The regular work week for employees is 40 hours worked within a consecutive seven-day period. Unless your regular position requires a different work week schedule, the work week begins on Sunday and ends at midnight on Saturday. There may be times when a plant is scheduled for four, 10 hour days. Nothing in this handbook should be construed to guarantee a minimum or maximum number of workdays or working hours. Please refer to schedules posted at your location.

## Daily Schedule

Plant Production Work Schedules are posted on the employee bulletin board. It is your responsibility to check the bulletin board to determine the schedule for the following week.

The Company may set special hours in some departments because of critical operational needs or to ensure quantity and quality of product.

## Starting Time

Employees are expected to be at their work place or workstation at the start of their shift or day's work and, except for authorized breaks and lunch periods, are required to remain there until the end of their shift or until relieved. Please refer to posted schedules.

## Meals and Breaks

Employee lounges are located at each plant location. Employees are entirely relieved from duty during meal and break periods and should not eat at their workstations or perform any work during these periods. Employees should be prepared to resume work promptly at the end of their scheduled meal or break period. Please refer to posted schedules.

## Exchanging Shifts

Employees may not exchange shifts with another employee without the prior authorization of the Plant Manager. Approval to exchange shifts cannot be granted unless the exchange can be accomplished without interfering with the Company's operations and without requiring overtime.

SM-VC 0051

## Use of Exception Time Reports

It is the Company's policy that all exempt employees are required to complete a "Bi-Weekly Exempt Exception Time Report" for each bi-weekly period. Before submitting the report to the Payroll Department, the employee and appropriate supervisor or Plant Manager must sign all exception reports. No exception report is valid without both signatures.

## Breaks

Unless other lunch or break schedules are required by law, the Company provides its employees with two paid breaks in the standard workday (one in the morning and one in the afternoon) and a 30 minute unpaid lunch break during a normal work shift. (Note: For length and scheduling of breaks, consult with your supervisor.) If an employee is required to work or be on call through their lunch period, they must be paid at their regular rate for the lunch period and at the overtime rate if they have met the overtime requirements for weekly work (or daily overtime requirements where applicable). On such occasions the employee should note "no lunch" on the time card. The supervisor then should initial the time card or time sheet for that period worked. It is the supervisor's responsibility to insure that the employee records the prescribed lunch breaks by insuring the employee punches out and back in or writes the time in, if using a time sheet, for the lunch period. This procedure is to substantiate that the lunch break was taken as required.

If an employee is required to work three (3) or more hours in excess of the normal scheduled shift in a workday, they shall receive an additional break after two (2) hours of work beyond the end of their normal shift.

## Payroll Checks

The hourly or non-exempt salaried payroll checks cover work performed in the previous payroll period, including overtime. Time worked is recorded daily and the payroll checks are processed according to documented payroll records and time cards.

Employees leaving the Company will be paid for all hours worked as well as any earned and accrued vacation in accordance with Company policy and applicable state law.

## Paycheck Deductions

Federal or state laws require the following deductions from paychecks:

- Federal withholding tax
- State withholding tax (where applicable)
- Local taxes (where applicable)
- Social Security and Medicare taxes up to the required annual amount
- Wage garnishments (if applicable)

Other deductions may be made from your paycheck with your written authorization, including:

- Insurance and benefit premium contributions for you or your dependents' coverage
- Payments due to the Company for goods or services requested and received by you
- Voluntary transfers or deposits made on your behalf such as 401(k) contributions

## Shift Premium

All hourly employees will be paid any applicable shift premium for the shift on which the majority of their work was performed.

## Show-up Pay

If you are an hourly employee and report to work on a regularly scheduled workday without receiving prior notice of a shutdown (e.g., severe weather conditions, power or equipment failure), you will be provided with alternative work activities for at least four (4) hours of work at regular pay. If you elect to work, you will be paid; if you elect not to work, you will not be paid.

# G. OVERTIME

## Continuing Work

If you are performing an assignment which requires work beyond your normally scheduled hours, you are expected to work the necessary time to complete the assignment.

All hours worked beyond your normally scheduled hours must be pre-approved by your immediate supervisor or Plant Manager.

SM-VC 0053

# CERTIFICATE OF SERVICE

## AMBER GARCIA v. SHASTA BEVERAGES, INC., et al.

## 2:19‑cv‑07798 JWH (AFMx)

I am over the age of 18 and not a party to the within action. I am employed in the County of Orange, State of California; my business address is 335 Centennial Way, Tustin, California 92780.

On the date set forth below, I caused to be electronically filed the following document(s) described as:

**DECLARATION OF DANIEL P. STEVENS IN SUPPORT OF PLAINTIFFS' RENEWED MOTION FOR CLASS CERTIFICATION**

[X] **BY CM/ECF SYSTEM:** I caused the above-referenced document(s) to be sent by electronic transmittal to the Clerk's Office using the CM/ECF System for filing which generated a Notice of Electronic Filing to the CM/ECF registrants in this case listed below:

Christopher J. Kondon (172339)
christopher.kondon@klgates.com
Saman M. Rejali (274517)
saman.rejali@klgates.com
Jonathan D. Kintzele (316482)
Jonathan.kintzele@klgates.com
K&L GATES LLP
10100 Santa Monica Blvd.
8th Fl.
Los Angeles, CA 90067
TEL: 310-552-5000
FAX: 310-552-5001

*Attorneys for Defendants*

[X]   [Federal]   I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on November 6, 2020 Tustin, California.

*/s/ Ken Ho*
Ken Ho

**DECLARATION OF DANIEL P. STEVENS IN SUPPORT OF PLAINTIFF'S RENEWED MOTION FOR CLASS CERTIFICATION**

2:19-cv-07798 JWH-AFM