Daniel P. Stevens (SBN 164277)
*ken@scmclaw.com*
Heather McMillan (SBN 188939)
*heather@scmclaw.com*
STEVENS & McMILLAN
335 Centennial Way
Tustin, CA 92780
Tel.:  (714) 730-1000
Fax:  (714) 730-1067

Attorneys for Representative Plaintiff
AMBER GARCIA

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| AMBER GARCIA, on behalf of herself and other similarly situated non-exempt former and current employees,<br><br>　　　　　　Plaintiffs,<br><br>v.<br><br>SHASTA BEVERAGES, INC., NATIONAL BEVPAK, NATIONAL BEVERAGE CORP. and DOES 1 through 50, inclusive,<br><br>　　　　　　Defendants. | Case No.: 2:19-cv-07798 JWH-AFM<br><br>(LASC Case No.: 19STCV26045)<br><br>District Judge: Hon. John W. Holcomb<br><br>Action Filed:　　July 26, 2019<br>Action Removed:　September 9, 2019<br><br>**CLASS ACTION**<br><br>**DECLARATION OF AMBER GARCIA**<br><br>[Filed concurrently with: Notice of Motion for Class Certification and Request to Reopen Discovery; Motion for Class Certification and Request to Reopen Discovery; Declaration of Daniel P. Stevens; Proposed Order]<br><br>Hearing Date:　　12/04/2020<br>Hearing Time:　　9:00 AM<br>Department:　　　2 |

**DECLARATION OF AMBER GARCIA**

I, Amber Garcia, am over the age of 18 and declare as follows:

1. I worked for Shasta Beverages, Inc. ("Shasta") from 2015 to May 1, 2019.

2. For the majority of my time at Shasta, my title was Production Worker. I was paid hourly during my entire period of employment. My job duties included the following:

   a. Scheduling appointments based on production inventory;

   b. Keeping forms, office and shipping supplies available for office use;

   c. Answering phones, taking messages, responding to emails and helping customers with any problems;

   d. Generating shuttle orders, shipping confirmation orders and maintaining files;

   e. Filling out and maintaining monthly charge back reports; and

   f. Creating purchase order forms for services upon request by managers.

3. I worked at Shasta's La Mirada location.

4. There were 3 shifts at Shasta. There was a morning shift, a midday shift and a graveyard shift. There were approximately 100 hourly employees at the La Mirada location while I was employed there.

5. My typical schedule at Shasta was Monday through Friday from 9:00 a.m. to 7:00 p.m. I would occasionally work Saturdays or Sundays as well.

6. Attached to my Declaration as Exhibit "A" are true and correct copies of two pages from the Shasta Employee Handbook regarding meals and breaks. Under the "Meals and Breaks" section, the handbook states: "[e]mployees should be prepared to resume work promptly at the end of their scheduled meal or break period. Please refer to posted schedules." Despite the clear language in the handbook, schedules for meals and breaks for employees were never posted in the La Mirada facility or online.

7. During my employment, Shasta employees had a time card system, but they

-1-
DECLARATION OF AMBER GARCIA

were not required to clock out for lunches if they stayed in the facility during their meal periods. Instead, Shasta would automatically deduct half an hour of work time from the workday regardless of whether the employee actually received a 30 minute uninterrupted meal. This deduction occurred on all of my time records throughout my employment, even though I routinely did not receive a 30 minute uninterrupted meal. In addition, while I was working in the front office I was instructed to automatically deduct 30 minutes for each day worked for every time card I was asked to process (which I did). Moreover, I observed the other employees in the front office also automatically deducting 30 minutes for daily meal periods from the time cards they were processing.

8. The employees at Shasta were not provided with a relief person to do their job, so it was very difficult to take a meal or break period. There was no coverage for me if I had to take a break or meal, so I was routinely unable to get a break or meal period.

9. In addition, on a daily basis my supervisor interrupted my meal periods and breaks by texting my mobile phone, standing in the aisle waiting for me if I went to the restroom, or announcing over the intercom that my help was needed. I observed this happening constantly to other workers too. The usual reason given for the interruptions would be the volume of work and that there was not enough worker coverage. Typically there were not enough workers in general to do the work, because there was only one person hired per position. Typically, the press of the work required everyone to be present at all times and I observed that because of this the majority of employees did not receive many of their breaks and uninterrupted meal periods.

10. Shasta never gave me an additional meal period if I worked more than 12 hours. When I was able to get a meal period, I often had to wait until the later part of my work day (beyond the fifth hour).

11. I complained to HR and management about not getting my breaks and uninterrupted meal periods many times. I also complained about the automatic deductions from my pay. In addition, I heard many other employees also complain about not getting their breaks and meals, and complaining about having time automatically deducted from

-2-
DECLARATION OF AMBER GARCIA

their time cards when they didn't get a meal period. I heard these complaints about twice a week from more than 15 different employees. Nothing was ever done to resolve these issues while I was employed.

12. Shasta never paid me a one hour premium for any of their meal and break violations. In addition, while I was processing time cards, I was never instructed to pay anyone for meal or break violations and I did not observe anyone in the office do so when they were processing time cards.

13. During approximately the last 5-6 months of my employment, Shasta started changing the way they handled overtime hours. If you worked more than 8 hours a day or 40 hours in a week, they would adjust the time card so that you would either get no overtime or some small fraction of the overtime you had actually worked.

14. I believe that the same issues I had with my pay, breaks and meal periods were shared by other persons who worked at Shasta. I understand that the Class includes current and former employees who did not receive all of their wages and overtime, did not receive pay for missed meal periods, and did not receive pay for missed breaks.

15. I will adequately represent the interests of all the members of the proposed Class. The Class is composed of current and former employees of Defendants who did the same type of work I did. My claims are typical of the other Class members and involve the same common issues.

16. I brought this lawsuit on behalf of me and other employees similarly situated to remedy wrongdoing by the Defendants. My interests are the same as the other Class members and I have no interest that is inconsistent with any Class member.

17. I will consider the interests of the other Class members just as I would my own and understand that I may need to put their interest before my own. I will participate in this lawsuit up through the time of judgment and will provide trial testimony. I have volunteered to represent the other Class members so that they can benefit from the savings of time, money and effort that a class action would have if this case is certified.

//

-3-
DECLARATION OF AMBER GARCIA

Case 2:19-cv-07798-JWH-AFM Document 106-3 Filed 11/06/20 Page 5 of 9 Page ID #:3381
Case 2:19-cv-07798-PA-AFM Document 91-3 Filed 02/24/20 Page 5 of 9 Page ID #:3380

-4-

1  18. I recognize and accept that the resolution of this lawsuit is subject to Court approval and must be in the best interest of the Class as a whole.

I declare under penalty of perjury of the laws of the State of California that the foregoing is true and correct.

Executed on February 23, 2020 at Buena Park 4:50 PM, California.

*Amber Garcia* (signature)
Amber Garcia

# EXHIBIT A

## Loss of Continuous Company Service

The following actions will result in a loss of, or break in, Continuous Company Service:

- **Resignation**
  Resignation by an employee will constitute a break in continuous service.
- **Voluntary Absence of More Than Three Days**
  An employee who is absent without prior approval of the Company and does not call into work for three (3) consecutive days will be considered a voluntary resignation (job abandonment). If you must be absent, you must be sure to notify your supervisor or Plant Manager prior to the start of your scheduled shift. If notification is later than the third day of the absence, you will lose your service date and have a break in continuous service and may not be eligible for re-hire.
- **Termination**
  Termination of employment by the Company will result in a break in continuous service.
- **Layoff of More Than Twelve Months**
  Employees who have completed their probationary period at time of layoff may retain their service for no more than 12 months while on layoff.
- **Failure to Report to Work After Notice of Recall**
  Notices of recall from layoff will be made by telephone or via the U.S. Postal Service (certified mail, return receipt requested). Such notices will be made to the last telephone number or address that you provided to the Company. You are required to provide your location with a current address and telephone number where you may be reached to respond to a recall. After receipt of a recall notice, you have three (3) work days to respond. Failure to respond within three (3) work days will cause a loss of the recall opportunity and continuous service. If for any reason you cannot report for work immediately when you receive a notice of recall, you should contact your Plant Manager as quickly as possible to determine what arrangements can be made.
- **Overstaying a Leave of Absence**
  Failure to report for work within three (3) work days of the scheduled return date from a leave of absence or other violations of the terms of the leave will cause a loss of continuous service and will be considered a voluntary resignation.

## D. HOURS OF WORK

### Work Week

The regular work week for employees is 40 hours worked within a consecutive seven-day period. Unless your regular position requires a different work week schedule, the work week begins on Sunday and ends at midnight on Saturday. There may be times when a plant is scheduled for four, 10 hour days. Nothing in this handbook should be construed to guarantee a minimum or maximum number of workdays or working hours. Please refer to schedules posted at your location.

### Daily Schedule

Plant Production Work Schedules are posted on the employee bulletin board. It is your responsibility to check the bulletin board to determine the schedule for the following week.

The Company may set special hours in some departments because of critical operational needs or to ensure quantity and quality of product.

### Starting Time

Employees are expected to be at their work place or workstation at the start of their shift or day's work and, except for authorized breaks and lunch periods, are required to remain there until the end of their shift or until relieved. Please refer to posted schedules.

### Meals and Breaks

Employee lounges are located at each plant location. Employees are entirely relieved from duty during meal and break periods and should not eat at their workstations or perform any work during these periods. Employees should be prepared to resume work promptly at the end of their scheduled meal or break period. Please refer to posted schedules.

### Exchanging Shifts

Employees may not exchange shifts with another employee without the prior authorization of the Plant Manager. Approval to exchange shifts cannot be granted unless the exchange can be accomplished without interfering with the Company's operations and without requiring overtime.

SM-AG 0013

## Use of Exception Time Reports

It is the Company's policy that all exempt employees are required to complete a "Bi-Weekly Exempt Exception Time Report" for each bi-weekly period. Before submitting the report to the Payroll Department, the employee and appropriate supervisor or Plant Manager must sign all exception reports. No exception report is valid without both signatures.

## Breaks

Unless other lunch or break schedules are required by law, the Company provides its employees with two paid breaks in the standard workday (one in the morning and one in the afternoon) and a 30 minute unpaid lunch break during a normal work shift. (Note: For length and scheduling of breaks, consult with your supervisor.) If an employee is required to work or be on call through their lunch period, they must be paid at their regular rate for the lunch period and at the overtime rate if they have met the overtime requirements for weekly work (or daily overtime requirements where applicable). On such occasions the employee should note "no lunch" on the time card. The supervisor then should initial the time card or time sheet for that period worked. It is the supervisor's responsibility to insure that the employee records the prescribed lunch breaks by insuring the employee punches out and back in or writes the time in, if using a time sheet, for the lunch period. This procedure is to substantiate that the lunch break was taken as required.

If an employee is required to work three (3) or more hours in excess of the normal scheduled shift in a workday, they shall receive an additional break after two (2) hours of work beyond the end of their normal shift.

## Payroll Checks

The hourly or non-exempt salaried payroll checks cover work performed in the previous payroll period, including overtime. Time worked is recorded daily and the payroll checks are processed according to documented payroll records and time cards.

Employees leaving the Company will be paid for all hours worked as well as any earned and accrued vacation in accordance with Company policy and applicable state law.

## Paycheck Deductions

Federal or state laws require the following deductions from paychecks:

- Federal withholding tax
- State withholding tax (where applicable)
- Local taxes (where applicable)
- Social Security and Medicare taxes up to the required annual amount
- Wage garnishments (if applicable)

Other deductions may be made from your paycheck with your written authorization, including:

- Insurance and benefit premium contributions for you or your dependents' coverage
- Payments due to the Company for goods or services requested and received by you
- Voluntary transfers or deposits made on your behalf such as 401(k) contributions

## Shift Premium

All hourly employees will be paid any applicable shift premium for the shift on which the majority of their work was performed.

## Show-up Pay

If you are an hourly employee and report to work on a regularly scheduled workday without receiving prior notice of a shutdown (e.g., severe weather conditions, power or equipment failure), you will be provided with alternative work activities for at least four (4) hours of work at regular pay. If you elect to work, you will be paid; if you elect not to work, you will not be paid.

## G. OVERTIME

### Continuing Work

If you are performing an assignment which requires work beyond your normally scheduled hours, you are expected to work the necessary time to complete the assignment.

All hours worked beyond your normally scheduled hours must be pre-approved by your immediate supervisor or Plant Manager.

SM-AG 0015

# CERTIFICATE OF SERVICE

*Amber Garcia v. Shasta Beverages, Inc., et al.*

2:19-cv-07798 JWH-AFM

I am over the age of 18 and not a party to the within action. I am employed in the County of Orange, State of California; my business address is 335 Centennial Way, Tustin, California 92780.

On the date set forth below, I caused to be electronically filed the following document(s) described as: **DECLARATION OF AMBER GARCIA** addressed to the persons and addresses as stated below:

[X]  **BY CM/ECF SYSTEM:** I caused the above-referenced document(s) to be sent by electronic transmittal to the Clerk's Office using the CM/ECF System for filing which generated a Notice of Electronic Filing to the CM/ECF registrants in this case listed below

>Christopher J. Kondon
>Saman M. Rejali
>Jonathan D. Kintzele
>K&L GATES LLP
>10100 Santa Monica Blvd., 8th Fl.
>Los Angeles, CA 90067
>*christopher.kondon@klgates.com*
>*saman.rejali@klgates.com*
>*Jonathan.kintzele@klgates.com*
>TEL: 310-552-5000
>FAX: 310-552-5001

>*Attorneys for Defendant*

[X]  [Federal]  I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on November 6, 2020 at Tustin, California.

*/s/ Ken Ho*
Ken Ho

DECLARATION OF AMBER GARCIA