Daniel P. Stevens (SBN 164277)
donald@scmclaw.com
Heather McMillan (SBN 188939)
heather@scmclaw.com
Christopher E. Gavriliuc (SBN 324599)
chris@scmclaw.com
STEVENS & McMILLAN
335 Centennial Way
Tustin, CA 92780
Tel.:  (714) 730-1000
Fax:  (714) 730-1067

Attorneys for Representative Plaintiff
AMBER GARCIA

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMBER GARCIA, on behalf of herself and other similarly situated non-exempt former and current employees,<br><br>         Plaintiffs,<br><br>v.<br><br>SHASTA BEVERAGES, INC., NATIONAL BEVPAK, NATIONAL BEVERAGE CORP. and DOES 1 through 50, inclusive,<br><br>         Defendants. | Case No.: 2:19-cv-07798 JWH (AFMx)<br><br>(LASC Case No.: 19STCV26045)<br>District Judge: Hon. John W. Holcomb<br><br>Action Filed:    July 26, 2019<br>Action Removed: September 9, 2019<br><br>**CLASS ACTION**<br><br>**PLAINTIFF'S REPLY TO DEFENDANTS' OPPOSITION TO RENEWED MOTION FOR CLASS CERTIFICATION AND REQUEST TO REOPEN DISCOVERY AND CONDUCT CLASS DISCOVERY**<br><br>Hearing Date:   January 8, 2021<br>Hearing Time:   9:00 a.m.<br>Department:     2 |

## I. LOCAL RULE 7-19 REQUIREMENTS HAVE BEEN SATISFIED

An order that grants or denies class action can be altered or amended at any time prior to a final judgment in the case. *Rule 23(c)(1)(C)*; *In re Bayshore Ford Trucks Sales, Inc*, 471 F.3d 1233, 1254 (11th Cir. 2006). Assuming, arguendo, that a request for renewal of a motion for certification is subject to the same rules as a motion for reconsideration, then Local Rule 7-18 provides that a motion for reconsideration of a decision on any motion may be based on any one of the following grounds:

"(a) a material difference in fact or law from that presented to the Court that, in the exercise of reasonable diligence, could not have been known to the party moving for reconsideration at the time the Order was entered, or

(b) the emergence of new material facts or a change of law occurring after the Order was entered, or

(c) a manifest showing of a failure to consider material facts presented to the Court before the Order was entered."

In our case, the plaintiff has asserted three different theories, each of which by itself would satisfy Local Rule 7-18. It should be noted that there is no language within the Rule that states it is an extraordinary remedy or that the court should only grant such relief in unusual circumstances as the defendant has implied. Indeed, the 9th Circuit in the case cited by defendants, *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cri. 2003) states "highly unusual circumstances" would be required *but only if there were no* newly discovered evidence, clear error or new law. *Id*. Although that case was not interpreting Local Rule 7-18, it appears to set forth a similar rule of law.

### A. New Law was decided after the court's ruling in our case

*1. Frlekin is not dicta.*

In compliance with Local Rule 7-18, Plaintiff cited to the very recent case, *Frlekin v. Apple Inc.,* 979 F.3d 639 (9th Cir. 2020), to support this motion to renew class certification.

Defendants argue in their opposition that the 9th Circuit's opinion in *Frlekin* with regard to personal employee preferences was merely dicta.[1] However, the issue of personal employee preferences was a main issue raised by Defendants on their appeal: whether or not individualized differences--which class members chose to bring bags to work and thus subjected themselves to a search, which ones were never required to go through a search, and which stores had remote break rooms where they could store their belongings and presumably avoid a search--prevented class wide relief. *Frlekin v. Apple, Inc.*, 979 F.3d 639, 644 (9th Cir. 2020)  Thus, the ruling was most certainly not dicta.

### 2. *Frlekin's* opinion is not limited to summary judgment motions

The defendant also argued in its opposition that *Frlekin* does not represent a change in law concerning Rule 23's predominance requirement because it was not in the context of a motion for certification.[2] However, they do not dispute that it is a change or clarification of law (eg. by presenting older cases that have the same ruling), instead they argue that this court should not apply the ruling because its not made within the confines of a "predominance" argument.

Defendants have failed to cite any law that states that a holding concerning substantive law does not apply equally at trial, summary judgment, motions on the pleadings and other motions such as motions for certification. While each of these types of hearings have different procedures, with varying degrees of evidential proof required, the substantive law remains the same. If anything, a motion for certification has a lower standard for the plaintiff to meet than a plaintiff's motion for summary judgment.

A court has the power to alter or amend a class certification at any time, which would certainly include motions for summary judgment. *Rule 23(c)(1)(C)*. In the

---

[1] Def. Opposition 1:18-19

[2] Def. Opposition 6:10-15

*Frlekin* case, the defendant essentially argued typical class certification arguments in the context of the summary judgment motion--whether the individual issues made the case unmanageable or prevented resolution of the class wide liability issues--and the court found these questions did not prevent the class from going forward because they were merely damage questions. *Frlekin v. Apple, Inc.*, 979 F.3d 639, 644 (9th Cir. 2020). This is extremely important to our motion for reconsideration because, as noted in our opening brief, individualized damage questions do not defeat class certification. *Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1094 (9th Cir. 2010); *Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir. Cal. 1975).

Moreover, the holding in *Frlekin* does not limit itself to summary judgment motions only, it makes the much broader statement that the individualized differences between class members were "***irrelevant***" to the class-wide legal questions because they were merely damages questions. *Frlekin v. Apple, Inc.*, 979 F.3d 639, 644 (9th Cir. 2020).The defendant fails to explain why these types of individualized differences--which the 9th Circuit views as only damage questions at the summary judgment stage--should be treated as if they are not damage questions at the class certification stage. If these individualized differences are *irrelevant* at the summary judgment stage, then how can they be considered relevant at the class certification stage?

In *Frlekin,* the 9th Circuit ruled on the exact same issues that Judge Anderson analyzed when he only had other District Court opinions as his guide. Now that there is an appellate decision on point, justice can only be served by looking at the new rule of law and applying it to our facts.

*3. The court's denial in our case was based on its concern that personal preferences of the employees caused individualized inquiries which was a similar argument that the court in Frlekin ruled upon*

The defendant argued in it's opposition that *Frlekin* does not apply to our case stating: "while this Court noted that certain declarants in the instant case indicated

their personal preferences with respect to taking meal and rest breaks, it did not base its decision on the personal preferences of those declarants–at all."[3]

Yet, later in the same opposition while trying to argue a different point, the defendant states the opposite. They argue that the court denied certification because "a review of '35 additional declarations' filed by Plaintiff did not ameliorate whether 'individualized inquiries will be necessary to determine if class members missed a meal period or break because of Shasta's uniform policies/practices–**or** because of the employee's personal preference.'" [4]

So, despite their initial argument to the contrary, defendant admits and even cites to and quotes from a portion of Judge Anderson's ruling that clearly shows he based his holding on a concern that there would be individualized inquiries because some of the employees may have exercised their personal preferences with regard to breaks and meals. This is exactly the question the *Frlekin* court faced when they determined that individualized personal preferences (such as employees having the ability to avoid a bag search by not bringing a bag to work, or by choosing to store a bag in a remote break room, or by working at a location that did not enforce the searches) was merely a damages issue.[5]

**B. New Facts were discovered after the hearing**

Plaintiff alleged in its moving papers that Romy Collie's declaration was factually untrue and that the court relied upon it in its ruling. Defendant argues that her statement that the Company has "never had any policy or practice of altering .... hours worked" is not inconsistent with her admitting in her subsequent deposition that there was an automatic 30 minutes deducted from every employee's time card if they

---

[3] Opposition 1:19-22

[4] Opposition 10:22-27, quoting from Judge Anderson's ruling (Dkt. 44).

[5] Indeed, there will always be some employees who voluntarily choose to miss breaks or meals, and if that by itself were enough to prevent class claims then it would likely mean that no break and meal class actions would ever be certified.

worked 5.5 hours or more.[6] We disagree. An automatic deduction that was not the result of the employee's own timekeeping is by definition an alteration of their timecard. Since Ms. Collie was the office manager in charge of payroll during the time period of the class allegations, her factually untrue declaration was an important piece of evidence that the defendant relied upon in their original opposition. While they make an unsupported argument that the practice of deducting 30 minutes is legitimate because it represents the time the employees are supposed to take off for lunch, the declarations show that the employees often don't get their lunch. Keeping accurate records of hours worked is required under Labor Code Section 1174. The only way that an automatic deduction like this would not be in violation of their record keeping duties would be in a situation where there was a complete shutdown for meal periods, which is not the case here.

The defendant doesn't even address the other misstatements of Ms. Collie, such as her statement that Ms. Garcia had never complained to her about not receiving all of her meal breaks or not getting paid properly.

### C. The Court Failed to Consider Material Facts

Plaintiff argued in its moving papers that the court did not discuss or analyze the plaintiff's claim that none of the employees received a second meal break when they worked over ten hours. Defendant says we rehash the same arguments that were in our original motion, but how else can we raise this issue? To prevail on this point, we must show that we raised it in our original motion as a separate issue, and that the court failed to make a ruling on it.

The defendant provides no citation to the ruling that shows that the court ever discussed or considered the second meal break claim, instead they make vague assertions that the court looked at all of the declarations and individually analyzed the declarations. That may be true, but it doesn't change the fact that the court failed to

---

[6] Opposition 8:2-8

put in its opinion any analysis of the evidence concerning the missed *second* meal breaks despite the fact that the evidence was clear that it was a uniform policy and the fact that there was no counter evidence on the point.

Similarly, the defendant argues that because the court mentions the plaintiff's claim of thirty minute deductions that it therefore implicitly ruled upon the claim. This is a little more complicated because the court conflates two different theories as if they are one. Initially, the court notes that the plaintiff asserted two types of time card fraud 1) an automatic deduction of thirty minutes from the time cards and 2) a 6-7 month policy of altering time cards to reduce overtime hours. But then, the court really only discusses the issue of manual time card alterations concluding that "it appears that time card alterations may have occurred on an ad-hoc basis." Why the court chose to address this second type of time card fraud at all is surprising in light of the fact that plaintiff conceded the point in their Supplemental Reply.

The court's failure to analyze the fraud with respect to the main claim--that there was an automatic thirty minute deduction to everyone's timecard regardless of whether they took a lunch or not--is even more surprising given that there was NO counter evidence that the company was not employing an automatic thirty minute deduction.

**II. THE STANDARDS FOR CLASS CERTIFICATION**

The defendants have limited their opposition to the issues of predominance and superiority, so we shall do the same.

The defendants argue that this court should not consider *Safeway v. Superior Court,* 238 Cal.App.4th 1138, 1159 (2015) because it was not raised in the original motion and it is not new law, however, they are in error. Plaintiff did indeed rely on the Safeway case in the original motion for certification.[7] The *Safeway* case is important to establish that any uniform policy should support a class action; the

---

[7] Plaintiff's Supplemental Reply Brief p. 3, 18-22

*Frlekin v. Apple Inc.,* 979 F.3d 639 (9th Cir. 2020) case is important to establish that individualized inquires involving employee preferences or choices are merely issues with respect to damages; and the *Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1094 (9th Cir. 2010) case is important to establish that individualized inquires related to damages do not defeat class certification. These cases should not be analyzed in a vacuum, they work together to establish the guidelines for whether or not predominance and superiority are met in cases with fact patterns similar to our case. When looking at these three appellate cases in conjunction, it is clear that the individualized inquiries in our case are merely issues related to damages and should not be the basis for denying certification.

With regard to superiority, the defendant's first argument appears to be either that California workers have shown that they are willing to bring individual claims so class claims aren't necessary and/or that the employees in this case don't want to pursue claims because of the six declarations from workers that the defendant offered that said either they were paid for all of their time or that they rarely missed meal periods.[8]

This is a nonsensical argument. It is complete speculation that the employees are willing to bring individual claims. The defendant has failed to show that any employees have brought individual claims, and based on the 12 plus hours a day the employees are being worked, one wonders which employee would even have time to engage in litigation. Similarly, the fact that defendant was able to convince six employees to sign a declaration that they were either paid for all of their time or that they rarely missed meal period doesn't prove that no one in the class wants to proceed against the employer, it merely proves, if anything, that there may be some people in the class that have little or no damages. The 22 declarations from the Orange County facilities that the plaintiff provided show there are plenty of people who have

---

[8] Opposition p. 19, lines 2-8

damages.

Next, the defendant argues that plaintiff has provided no plan for proving damages. However, the Ninth Circuit has held that "[n]othing in the Advisory Committee Notes [to Rule 23] suggests grafting a requirement for a trial plan onto the rule. *Chamberlan v. Ford Motor Co.*, 402 F.3d 952, 961 n. 4 (9th Cir.2005).

Instead, the court may find the case is manageable by recognizing the court's own ability to "couple uniform findings on common issues with innovative procedural tools that can efficiently resolve individual questions regarding eligibility and damages". *Boyd v. Bank of Am. Corp.*, 300 F.R.D. 431, 444 (C.D. Cal. 2014).

Here, due to the uniform application of policies to the proposed class members, calculating damages for the class will be manageable. Starting with the first subclass, the employees' time records will reveal which employees worked over 10 hours in a day, thereby entitling them to a second meal period. *(See* IWC Wage Orders 1 and 9, subsection 7(A)(3), requiring hours worked to be recorded). Plaintiff's allege that Defendant had a uniform policy of never providing any of their employees with a second meal period and/or premium pay for the second meal period. When said policy is proven, damages are calculated easily, by counting the number of times an employee worked over 10 hours from employee time records. Thus, no individual inquiries will predominant.

Likewise, the rest of the proposed subclasses are manageable as common issues derived from uniform policies predominate and apply to all of Defendant's employees. Thus, innovative procedural tools will successfully manage the class and aid in the determination of individual damages. For example, "courts can employ 'administrative mini-proceedings, special master hearings, and specially fashioned formulas or surveys'" to manage a class and determine individual issues. *Id*. The Central District has held that the "availability of these tools, coupled with the predominance of common questions, demonstrates that this class is manageable, and will "achieve economies of time, effort, and expense ... without sacrificing procedural

1  fairness or bringing about other undesirable results." *Boyd v. Bank of Am. Corp.*, 300
2  F.R.D. 431, 444 (C.D. Cal. 2014). Moreover, the California Court of Appeals affirms
3  that a Trial by Formula is an acceptable method of calculating damages. *Williams v.*
4  *Superior Court*, 221 Cal. App. 4th 1353, 1365 (2013), as modified (Dec. 24, 2013).
5  However, the Court also noted that "damage calculations have little, if any, relevance
6  at the certification stage before the trial court and parties have reached the merits of
7  the class claims." *Id*. At the certification stage, "the concern is whether class members
8  have raised a justiciable question applicable to all class members." *Id.* Since Plaintiff
9  has shown common issues predominating the class members, class certification
10 should be granted.

11      Nonetheless, Defendants argue that the damages calculations in this case will
12 be unmanageable because of differences in employee departments and work
13 experiences, citing *Hughes v. Winco Foods* and *Brown v. Fed Express Corp* in
14 support. However, in *Hughes v. Winco Foods*, the Defendant had employed thousands
15 of non-exempt employees in its 30 California stores, who had 40 different job titles
16 and descriptions among hourly employees. *Hughes v. WinCo Foods*, No. ED
17 CV11-00644 JAK, 2012 WL 34483, at *2 (C.D. Cal. Jan. 4, 2012). In *Brown v. Fed*
18 *Express Corp*, FedEx's truck fleet consisted of different types of vehicles operated by
19 different classifications of drivers employed in California, with Couriers at 80
20 different locations in California and RTDs at approximately 34 different locations.
21 *Brown v. Fed. Express Corp.*, 249 F.R.D. 580, 582 (C.D. Cal. 2008).

22      In this case, the class is approximately 350 people from predominantly one
23 location. In addition, the department and job title are irrelevant for purposes of
24 liability in our case because we assert that no one was able to get a second meal
25 period and everyone was subjected to the automatic thirty minute deduction.
26 However, to the extent that there will need to be a damage calculation related to how
27 often the thirty minute damage calculation resulted in losses to the workers, the most
28 common tool used is a statistical analysis of representative samples, which by their

nature seek information from only a small part of the group. Perhaps in the early days, courts were unsure of using statistical samples for class actions, but now it is commonplace. Just like there are experts who can determine present day value of potential future economic harm, we now use experts who can calculate how many people need to be sampled to attain the court's required level of confidence in the sample (although usually these "trial plans" are put together after summary judgments have been resolved). Since the class is relatively small already, acquiring data for a representative sample and statistical analysis will certainly be manageable, demonstrating that class adjudication is the superior method to fairly and efficiently adjudicate the claims.

Respectfully submitted,

Dated: December 23, 2020      By:   */s/ Daniel P. Stevens*
DANIEL P. STEVENS
HEATHER K. McMILLAN

# CERTIFICATE OF SERVICE

*Amber Garcia v. Shasta Beverages, Inc., et al.*

2:19-cv-07798 JWH-AFM

I am over the age of 18 and not a party to the within action. I am employed in the County of Orange, State of California; my business address is 335 Centennial Way, Tustin, California 92780.

On the date set forth below, I caused to be electronically filed the following document(s) described as: **PLAINTIFF'S REPLY TO DEFENDANTS' OPPOSITION TO RENEWED MOTION FOR CLASS CERTIFICATION AND REQUEST TO REOPEN DISCOVERY AND CONDUCT CLASS DISCOVERY** addressed to the persons and addresses as stated:

[X] **BY CM/ECF SYSTEM:** I caused the above-referenced document(s) to be sent by electronic transmittal to the Clerk's Office using the CM/ECF System for filing which generated a Notice of Electronic Filing to the CM/ECF registrants in this case listed below

> Christopher J. Kondon
> Saman M. Rejali
> Jonathan D. Kintzele
> Jonathan.kintzele@klgates.com
> K&L GATES LLP
> 10100 Santa Monica Blvd., 8th Fl.
> Los Angeles, CA 90067
> *christopher.kondon@klgates.com*
> *saman.rejali@klgates.com*
> *Jonathan.kintzele@klgates.com*
> Tel: (310) 552-5000
> Fax: (310) 552-5001
>
> ***Attorneys for Defendant***

[X]   [Federal]   I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on December 23, 2020 at Tustin, California.

*/s/ Donald E. Corbett*
Donald E. Corbett